[Crim. No. 2678.    Third Dist.    Sept. 27, 1956.]

THE PEOPLE, Respondent, v. FRED CARNER,
Appellant.

Robert K. Winters, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Defendant was convicted of the crime of forcible rape (Pen. Code, § 261, subd. 3) and appeals from the judgment and order denying his motion for a new trial. Defendant does not dispute the sufficiency of the evidence to support the verdict of the jury but contends that reversible error was committed by the trial court in the improper admission of evidence and in an erroneous instruction to the jury.

It appears from the record that the defendant, Fred Carner, spent the late afternoon and evening of June 30, 1955, drinking at a Fairfield tavern. He left the inn at about 10 p.m. and drove to Vacaville where he stopped near a restaurant known as Corral Number 3.

Meanwhile, after a day of assisting her husband in a television repair business as well as caring for her baby and her household, 22-year-old Carol June Lingo, the prosecutrix, decided to take a stroll near her Vacaville home and see how her friend and neighbor, Irma Smith, was getting along on a new job. At about 10:45 p.m. Carol arrived at the Corral Number 3 where Irma had just started working. She stayed only briefly since her friend was extremely busy.

Leaving the restaurant she paused for a moment to observe some construction work being done near the restaurant. As she gazed at the excavation she was addressed by the defendant and a brief casual conversation ensued. She was surprised when defendant called her by her first name and stated that he knew her father well. They talked politely for a moment then she stated that it was time for her to be getting home. He offered to drive her home but she declined politely saying that she would rather walk. He continued his offer to drive her home and appeared to be hurt and offended when she refused. Not wishing to offend a man whom she thought to be a friend of her father she finally consented to riding to her home with him.

It soon became abundantly clear that defendant had no intention of taking her home. She protested repeatedly and even tried to get him to stop at the home of one of her friends as they passed by. The defendant paid no attention and continued driving out of town at a high rate of speed.

The prosecutrix testified that defendant stopped the car on a lonely country road and after a violent struggle in which she resisted his advances to the limit of her strength, she was forced to submit to an act of sexual intercourse. Defendant later released the prosecutrix in the town of Vacaville and prosecutrix quickly reported to the police station the events that had transpired. Her testimony was corroborated by evidence of multiple scratches, abrasions and contusions upon her forehead, her right temple, her neck and upon her knees. Her husband testified that there were no observable bruises upon his wife when she left the house for her evening walk but that she was badly bruised when she returned home the next morning.

A medical examination of defendant following his arrest the next day revealed scratches, abrasions, and contusions upon his back, shoulders, legs, cheeks and lip. He also had a small abrasion on the inner edge of his foreskin. It was the opinion of the doctor that the injuries found upon the defendant's body were inflicted within 24 hours of the time of the examination.

Upon his arrest about 1 p.m. on July 1, 1955, defendant denied having seen the prosecutrix before and denied having had sexual intercourse with her, but upon the trial he admitted the act of sexual intercourse but maintained that the prosecutrix consented to the act and that no force or violence was used by him to accomplish the act.

Defendant first contends that the court erred in overruling his objections to certain questions asked by the district attorney during the cross-examination of defendant. The record shows the following:

"Q. [By MR. PETERSON] : . . . I believe you also testified in response to some of Mr. Winters' questions, that you decided to tell the truth after your attorney had talked to you, is that correct? A. That's true.

"Q. In other words, you weren't going to tell the truth until somebody told you to, is that right? A. Well, that's the first time I'd been into any trouble. I didn't tell them what happened until I got hold of an attorney. He told me to go ahead and tell the truth, and nothing but the truth.

"Q. This is the first time you've been in any trouble? A. That's true.

"Q. This is the first time you've been arrested?

"MR. WINTERS: I will object to that question as not being relevant to any issue here.

"THE COURT: Overruled.

"BY MR. PETERSON: Q. Is this the first time you've been arrested? A. No, it isn't.

"MR. WINTERS: I'm going to object, and cite the District Attorney for prejudicial misconduct. The only question permitted is, have you ever been convicted of a felony.

"THE COURT: I've overruled it.

"MR. WINTERS: I'd like to take an exception, and cite Your Honor for prejudicial misconduct.

"THE COURT: The Court is trying to show both of you courteous treatment, and give your client a fair trial.

"MR. WINTERS: I understand that, but when your ruling permits a prejudicial question to be asked of a witness concerning an offense not amounting to a felony, I feel that it's highly prejudicial to my client, both on your part——

"THE COURT: You may have your exception, and your objection is again overruled.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Have you ever been arrested before? A. I have."

On redirect examination, defendant's counsel further developed defendant's testimony and therein he stated in response to his counsel's inquiry that said arrest was for drunk driving.

█ Defendant is correct in his contention that the trial court erred in permitting the prosecution to ask defendant on cross-examination whether or not he had ever been arrested.

This question was presented in *People* v. *Hamblin*, 68 Cal. 101 [8 P. 687], where, as in the present case, there was no attempt made to show that the defendant had been convicted of a felony and the question merely sought to establish that defendant had been arrested. That court quoted the following language from *People* v. *Elster*, 3 W.C.R. 37: "The only possible object of asking the questions was to impeach the credibility of the witness. But the testimony was not admissible for that purpose. The mere fact that the witness had been arrested does not prove nor tend to prove that he had been convicted of any offense; and until there is proof of conviction the witness was protected by the legal presumption of innocence. Hence the rule formulated by section 2051 of the Code of Civil Procedure:——" (See also 3 Wigmore on Evidence 545, § 980a, 3d ed.) The language of said section providing that a witness may not be impeached by evidence of particular wrongful acts limits impeachment of this character to cases where there has been a conviction of a felony. Penal Code, section 1102, makes this rule applicable to criminal trials.

Respondent contends that because defendant offered evidence to prove his good character in respect to the trait involved in the charge, i.e., that his general reputation for sexual morality was good, the challenged evidence was admissible to show that his general reputation was bad and to rebut defendant's gratuitous statement that he had never been in trouble before. We do not think that respondent correctly states the California rule. The State is confined to evidence of the general bad reputation of defendant for sexual morality or evidence of judgment of conviction of a felony. (See 22 So.Cal.L.Rev. 341-347; 3 Wigmore on Evidence 550, § 983, 3d ed.; *People* v. *Hamilton*, 33 Cal.2d 45 [198 P.2d 873].) All of the cases cited by respondent introduce other acts of the same nature for the purpose of establishing guilty intent or motive and are not in point.

Defendant contends further that the error in not sustaining his objections to said questions was aggravated by the following instruction which the court gave to the jury:

"Evidence was elicited from the defendant on his cross-examination by the District Attorney, that he had been arrested for a prior offense, to wit: a misdemeanor; said prior offense was in no way connected with the charge on which defendant is now being tried. Such evidence was elicited and allowed by the court only on the question on the credibility

of the defendant, and is not to be considered by you, in the slightest degree, as tending to connect the defendant with the offense of rape on which he is so being tried, nor as tending to prove in any way, his guilt thereof.''

The instruction should not have been given because as provided in section 2051 of the Code of Civil Procedure a witness may not be impeached ''by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony,'' and the instruction as given by the court permtited the jury to consider inadmissible evidence in determining the credibility of defendant.

The remaining contentions of defendant are without merit. The record discloses that defendant's counsel objected to the question, ''As a matter of fact, Mr. Button originally signed a surety on your bail, did he not?'' after defendant's affirmative answer was given. ▮ Where the subject matter of the question is objectionable and a party fails to interpose objection until after it is answered, he thereby waives his right to complain of the admission of the testimony. (*People* v. *Brazil,* 53 Cal.App.2d 596, 598-599 [128 P.2d 204]; *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513].) Then the question was asked, ''And then Mr. Button subsequently withdrew as surety on your bail, did he not?'' Objection by defendant's counsel was sustained and the jury admonished. Upon further cross-examination, defendant was asked a series of questions concerning whether or not he was still employed by Mr. Button and whether or not the latter took defendant home from two bars on a certain date. When defendant's counsel explained that said date was two days prior to the trial, the court sustained defendant's objection, ordered the answer stricken and admonished the jury. ▮ Where evidence is stricken out on motion of defendant and the jury are admonished to disregard it, any error in admitting such testimony is generally cured. (*People* v. *Bolton,* 215 Cal. 12, 18-19 [8 P.2d 116].) ▮ The jury is presumed to obey such orders. (*People* v. *Pearson,* 111 Cal.App.2d 9, 21 [244 P.2d 35]; *People* v. *Young,* 25 Cal.App.2d 148, 156 [77 P.2d 271].)

▮ While, as we have hereinbefore stated, certain errors were committed in the admission of testimony and in instructions to the jury, we do not believe that such errors are sufficient to justify a reversal of the judgment. A reading of the entire record convinces us that the evidence was such

that the admission of evidence that defendant had previously been arrested for drunk driving would have little weight with the jury in determining whether he was guilty of the crime of rape. We are convinced further that the instruction complained of would likewise have little weight with the jury. It must be borne in mind that the jury had an opportunity to see and hear the witnesses and that the record shows that defendant was ably defended. Defendant, a married man and the father of six children, admitted taking the prosecutrix in his automobile to a lonely road at a late hour of the night and there consummating an act of sexual intercourse with her. These admitted facts would undoubtedly prejudice defendant in the eyes of the jury far more than evidence that he had previously been arrested on a charge of drunk driving. Having in mind the provisions of section 4½ of article VI of our state Constitution that no judgment shall be set aside on the ground of misdirection of the jury or error in the introduction or rejection of evidence or for error as to any matter of pleading, "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice," we believe that no miscarriage of justice has resulted.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.