**Jack Jeffrey McCRACKEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 775.**

Supreme Court of Alaska.

Sept. 11, 1967.

5.  235 F.2d 845, 849.

James C. ·Hornaday, Kenai, for appellant.

Donald A. Burr, Atty. Gen., Juneau, Thomas E. Curran, Jr., Dist. Atty., Robert N. Opland, Asst. Dist. Atty., Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Appellant seeks reversal of two convictions of assault with a dangerous weapon.[1] Review of appellant's three specifications of error has led us to the decision that the judgments and commitments entered by the superior court should be affirmed.

■ Appellant's initial assertion of error concerns a question which the trial judge propounded during voir dire of the prospective jury panel.[2] The text of the disputed question is as follows: "Have any of you ever sat on a jury in which Mr. McCracken has been involved?" Appellant contends that the trial court's inquiry "constituted prejudicial error in that [it] indicated to the jury that Appellant had been tried previously and convicted."

Appellant further argues that the question should be considered together with the court's remarks which immediately followed, and when so viewed constitutes prejudicial error. After the trial judge had asked the question of the panel, he went on to state:

> I know of course that many of you have previously sat on cases where the State was involved, because you have previously indicated, many of you, that you have sat on criminal cases.

1. Appellant was indicted on three counts of assault with a dangerous weapon and two counts of assault with intent to kill. These charges were jointly tried to a superior court jury which returned guilty verdicts on two counts of assault with a dangerous weapon and verdicts of not guilty as to one count of assault with a dangerous weapon and one count of assault with intent to kill. At the conclusion of the case, the state had consented to a dismissal of one charge of assault with intent to kill.

2. Our Criminal Rule 24(a) reads in part: The court may permit the defendant or his attorney and the prosecuting attorney to conduct the examination of prospective jurors or may itself conduct the examination.

We find no merit in appellant's argument. The record shows that at the outset of the court's examination of the panel they were asked whether they had previously served on juries in criminal cases.[3] The panels' response indicated that many of them had prior experience. In light of what occurred prior to the asking of the question, we cannot interpret the trial judge's inquiry and subsequent comments as indicating that "Appellant had been tried and previously convicted." We hold that there was no error on the trial court's part in asking the question or in the following comment which was made by the trial court.

■ The second assertion of error concerns a portion of the testimony given by Dr. J. E. Carr. Prior to the testimony of this witness, the state had introduced evidence of appellant's brutal pistol-whipping of Donald Callaway and Howard Mallory. At the outset of his direct examination, Dr. Carr testified that shortly after the assaults occurred he had occasion to examine Donald Callaway. Dr. Carr was then asked the following question by the state's attorney:

Doctor, do you have an opinion based upon your examination, your qualifications as a doctor, and within reasonable medical certainty, as to whether or not the damages that you saw on that occasion, could have been administered with fists?

Trial counsel for appellant objected on the ground that a proper hypothetical question was a necessary prerequisite to the giving of such an opinion.[4] The objection was overruled and the witness testified that in his opinion the injuries inflicted upon Donald Callaway could not have been administered with bare fists.[5]

In this appeal appellant claims that the superior court's ruling was erroneous because the opinion testimony sought, of necessity, required the asking of a hypothetical question encompassing such factors as "Appellant's physical stature and physical condition, his experience as a fighter and the length of the fight."

In support of his position, appellant relies upon our decision in Zerbinos v. Lewis.[6] In that case we said:

[W]here the material facts are undisputed as they were in this case regarding the amount of brake fluid observed on the ground after the accident, and the sole question is whether a certain admitted condition might or could have produced a claimed result (sudden, complete loss of the braking effect of the foot

3. The trial judge asked "how many of the jurymen here have previously served on juries in criminal cases?" The record then reflects that the following transpired:

A rather large number. Are there some of you who have served on civil cases who have not served on criminal cases? About seven or eight, thank you.

Also prior to the portion of the court's interrogation which is disputed here, the trial judge stated to the jury panel, "I assume that many of you, if not most of you, have seen Mr. Opland around in court." Mr. Opland, at the time, was an assistant district attorney.

4. Mr. Wanamaker, appellant's trial counsel, objected in the following manner:

Your Honor, that's not a proper hypothetical question. It * * * doesn't set forth the facts brought out in the testimony here as to the persons involved, or physical stature, their fighting abilities, the facts that are set forth in this case, as Your Honor well knows, in every question of this type calling for the testimony of a doctor as an expert witness on an opinion, these facts have to be set out.

5. On cross-examination Dr. Carr admitted that a "mark" which appeared on Donald Callaway's forehead could have been caused by a blow from a fist alone. Dr. Carr further testified on cross-examination that cuts on Callaway's right cheek and forehead could have been caused by fists.

Dr. Lester H. Marquettes, Jr. testified for the defense. He was of the opinion that the injuries in question could have been caused by bare fists.

6. 394 P.2d 886, 891 (Alaska 1964) (footnote omitted).

**516**

brake), the prevailing rule is that every fact in evidence which might affect the opinion called for must be incorporated in the hypothesis.

We find that appellant's reliance upon *Zerbinos* is misplaced. In Crawford v. Rogers,[7] which modified the hypothetical question rule of *Zerbinos,* we said:

The general rule is that when the facts upon which an opinion is based are not within the expert witness's own personal knowledge, such facts must have been supplied to the jury by other evidence and then presented to the witness hypothetically before his opinion may be received.

Here the record shows that Dr. Carr actually examined Donald Callaway after the assault had occurred. In such circumstances it was not necessary to couch the question pertaining to the cause of Callaway's injuries in hypothetical form. We hold that it was not error for the superior court to have permitted the witness to give his expert opinion as to the cause of Donald Callaway's injuries.[8]

■ Appellant's final point is that a new trial should be granted because the prosecuting attorney, in final argument, commented on appellant's failure to testify. The assertedly prejudicial remarks made by the prosecutor occurred during his rebuttal argument to the jury. In commenc-

ing this portion of his final argument, the prosecutor stated:

I was rather curious upon making final argument as to what Mr. Wanamaker would be able to say on behalf of his client. And it appears that there is nothing that he can say on behalf of his client. All that he can do is try to attack those who have complained against his client.

Later in his argument the prosecutor made the following remarks:

[I] submit to you that there is no defense in this case for Mr. Jack Jeffrey Mc-Cracken. There is no defense because his conduct in this particular instance has made his position totally indefensible; morally, legally, ethically indefensible. One human being just cannot be permitted by the mores of our society, and for our * * * own collective good—one human being cannot be permitted to administer this kind of treatment upon another.

Appellant's trial counsel moved for a mistrial on the ground that the foregoing constituted "a direct comment on the failure of the defendant to take the stand." The trial judge denied the motion on the ground that he did not consider the prosecutor's remarks to be comment on the failure of appellant to testify. The trial judge further held that even if the comments could be considered improper they were cured by two instructions which the jury received.[9] We agree with the superior

---

7. 406 P.2d 189, 191 (Alaska 1965).

8. McCormick, Evidence § 14, at 29 (1954); 2 Wigmore, Evidence § 675 (3d ed. 1940).

9. The jury was, in part, instructed that:
In this case, the defendant has elected not to take the witness stand. You are hereby instructed that under the law he has this right not to take the witness stand if he so elects, and you are instructed that you are not to draw any unfavorable inference against him on that account.
In regard to the burden of production and the burden of persuasion, the court instructed that:

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution. The law does not impose upon a defendant the duty of producing any evidence.

court's ruling and hold that the prosecutor's remarks did not violate appellant's privilege against self incrimination.[10]

■ In Knowles v. United States[11] the court stated:

It is concededly improper and reversible error to comment on the failure of a defendant to testify in his own behalf, and the test is whether the language used was manifestly intended or was of such character that the jury would naturally

and necessarily take it to be a comment on the failure of the accused to testify.[12]

We adopt the *Knowles* test for this jurisdiction. In applying this test to the prosecutor's comments, in light of the context in which they were made, we cannot find that the language used was either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the failure of appellant to testify.

The judgments and commitments entered below are affirmed.

10. Article I, section 9 of the constitution of Alaska provides in part that "No person shall be compelled in any criminal proceeding to be a witness against himself." Also pertinent is our Criminal Rule 26(b)(4) which states:
> If the accused in a criminal action exercises his privilege not to testify or to prevent another from testifying, no comment may be made thereon by any person, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom.

In Griffin v. State of California, 380 U.S. 609, 616, 85 S.Ct. 1229, 14 L.Ed.2d 106, 110 (1965) (footnote omitted), the Supreme Court of the United States held
> that the Fifth Amendment, in its direct application to the Federal Government,

> and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

11. 224 F.2d 168, 170 (10th Cir. 1955).

12. See the following authorities which have followed the *Knowles* test: Brown v. United States, 370 F.2d 874, 876 (9th Cir. 1966); Hayes v. United States, 368 F.2d 814, 816 (9th Cir. 1966); Davis v. United States, 357 F.2d 438, 441 (5th Cir.), cert. denied, 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957, 960–961 (2d Cir.), cert. denied, 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965).