William Charles ANDERSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 807.

Supreme Court of Alaska.

March 8, 1968.

---

David H. Call, of Yeager & Call, Fairbanks, for appellant.

Jay Hodges, Dist. Atty., James R. Blair, Asst. Dist. Atty., Fairbanks, for appellee.

## OPINION

Before NESBETT, C. J., DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

In this appeal appellant claims that he is entitled to a new trial for the reasons that he was denied "his Constitutional right to effective representation of counsel," and because of a prejudicial question propounded by the prosecuting attorney in the course of his examination of the complaining witness. We affirm the judgment and commitment entered by the superior court.

In the lower court appellant was indicted upon two counts of statutory rape and two counts of contributing to the delinquency of a minor. After trial by jury appellant was found guilty on all counts and thereafter received concurrent three-year sentences.[1]

Appellant's first point is that as a result of his trial counsel's confusion concerning the dates on which the offenses were allegedly committed, he was deprived of his constitutional right to "effective representation" of counsel.[2] We are unable to agree with appellant's assertion.[3]

1. Appellant received concurrent three-year sentences as to the statutory rape counts and concurrent two-year sentences in regard to the contributing to the delinquency of a minor charges.

2. The indictment charged that the offenses were committed on December 10, 1964, and January 15, 1965. The state's evidence tended to establish, and the prosecuting attorney in final argument emphasized, that the offenses were committed on December 15, 1964, and January 16, 1965. See Selman v. State, 411 P.2d 217, 224–225 (Alaska 1966), where this court discussed the sufficiency of an indictment which alleged the crime was committed "on or about" a certain date, as well as the permissible range of evidence under an indictment worded in this manner.

3. Appellant, in this appeal, is not represented by trial counsel.

Relying on the Supreme Court of United States' opinion in Powell v. State of Alabama,[4] where the term "effective assistance" was first used, appellant argues that this is the constitutional standard by which the quality of his attorney's services at trial should be judged.[5] In our view the Supreme Court used the term "effective" to "describe a procedural requirement, as contrasted with a standard of skill."[6] In rejecting appellant's argument, we are in accord with the court's views in Mitchell v. United States.[7] There Judge Prettyman, in speaking for the court, stated:

> We think the term 'effective assistance' —the courts' construction of the constitutional requirement for the assistance of counsel—does not relate to the quality of the service rendered by a trial lawyer or to the decisions he makes in the normal course of a criminal case; except that, if his conduct is so incompetent as to

deprive his client of a trial in any real sense—render the trial a mockery and a farce is one descriptive expression,—the accused must have another trial, or rather, more accurately, is still entitled to a trial.

The record does not reveal that appellant was denied "effective representation" in the Powell v. State of Alabama[8] procedural sense. Here there is no indication that appellant's trial counsel lacked adequate time to prepare for trial.[9] In short, there are no procedural irregularities appearing in the record concerning appellant's representation at the trial level which fall within the protective constitutional ambit of "effective representation."

In adopting the "mockery and farce" criterion under which assertions of incompetency of counsel will be determined, we have chosen a standard which has been embraced by numerous courts.[10] Reviewing

4. 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

5. The sixth amendment to the United States Constitution guarantees that, "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." Art. I, sec. 11 of the Alaska constitution contains an identical guaranty.

6. Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, 790 cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958). The court in the *Mitchell* case reached this conclusion after analysis of the Supreme Court's use of the term "effective" in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944); Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
In the *Mitchell* case the court also said at 790, of 259 F.2d that the Supreme Court of the United States
has never held that an accused is entitled to representation by a lawyer meeting a designated aptitude test. It

has never used the term to refer to the quality of the service rendered by a lawyer.

7. 104 U.S.App.D.C. 57, 259 F.2d 787, 793 cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

8. 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In *Powell* the Supreme Court focused upon the trial judge's all too indefinite attempted appointment of counsel and the inadequate time allowed between this unique gesture and the actual trial.

9. In reviewing claims of incompetency of counsel, we are of the opinion that no differentiation should be made between those cases involving retained counsel and those in which counsel was court appointed. See Lunce v. Overlade, 244 F.2d 108, 74 A.L.R.2d 1384 (7th Cir. 1957); Abraham v. State, 228 Ind. 179, 91 N.E.2d 358 (1950).

10. Authorities are collected in Annot., 74 A.L.R.2d 1390, 1403–04 (1960), Incompetency of Counsel Chosen By Accused As Affecting Validity of Conviction. Typical of the decisions is Lunce v. Dowd, 261 F.2d 351, 353–354 (7th Cir. 1958), where the court said:
We are not unmindful of the strict test to be applied to unbridled claims of incompetence brought by prisoners against their trial counsel after incar-

the record of the trial proceedings against this standard of incompetency, we cannot find that trial counsel's alleged confusion regarding the dates of the offenses rendered the trial a mockery or a farce.[11] Appellant's counsel in this appeal states that:

Trial counsel made timely objections and, for the most part, conducted his direct and cross-examination skillfully and vigorously. But he confused the crucial dates * * *.

Appellant then goes on to argue that because of this confusion his trial counsel failed to refute by testimony and argument the state's evidence and arguments which tended to show that the offenses occurred on the 15th of December and on the 16th of January 1965.[12] At trial appellant testified that he worked a full eight hours on December 15, 1964. Concerning the January 15 and 16, 1965, dates there is considerable evidence in the record to the effect that appellant had worked overtime

on the 15th and had departed at seven in the evening of January 15 for Anchorage where he spent all of the next day working. Trial counsel for appellant stressed these aspects of appellant's defense in his argument to the jury. In his testimony appellant emphatically denied ever having had, at any time, sexual intercourse with the complaining witness or at any time having committed an act which could have contributed to her delinquency. Additionally, both parties concede that at certain points in her testimony the complaining witness was uncertain as to the dates when the rapes and contributing acts occurred.

Overall, we agree with appellant's present counsel that the quality of representation accorded him at trial did not render the same a mockery or a farce.[13] Our study of the record leaves us with the conclusion that appellant has in fact received a fair trial.

ceration for crimes has given time for bitter reflection. To allow complaints of mistake in judgment, error in trial strategy or misconception of the law to be labeled as 'incompetence' would be to open the doors to every prisoner to charge his conviction to errors of counsel. 'Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show *the representation of counsel was such as to reduce the trial to a farce or a sham. Otherwise, they should be dismissed.'* United States ex rel. Feeley v. Ragen, 7 Cir., 1948, 166 F.2d 976, 981. (emphasis the court's)

See also Black v. United States, 269 F.2d 38, 42 (9th Cir. 1959), cert. denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357, motion for leave to file petition for writ of mandamus denied, 362 U.S. 947, 80 S.Ct. 866, 4 L.Ed.2d 865 (1960); United States v. Miller, 254 F.2d 523, 524 (2d Cir.), cert. denied, 358 U.S. 868, 79 S.Ct. 100, 3 L.Ed.2d 100 (1958); and United States v. Meyers, 139 F.Supp. 724, 727, 16 Alaska 214 (D. Alaska 1956), where Judge Hodge stated:
However, mere allegations of incompetency or inefficiency of counsel are

not sufficient to attack the judgment, unless such representation was such as to make the trial a farce and a mockery of justice.

11. Counsel for appellant in this appeal concedes that, "The trial below was neither a mockery nor a farce."

12. Appellant also asserts that his counsel's confusion resulted in the failure to offer any documentary evidence to show that on the 15th of December he worked a full day (the offenses allegedly took place during working hours), and that on January 16 he worked a full day in Anchorage, some 425 miles from Fairbanks —the situs of the crimes charged.

13. In our opinion the record in this case demonstrates the soundness of adopting the mockery and farce rule. The standard contended for by appellant would place both our trial judges and this court in the position of having to evaluate the efficacy of counsel's trial tactics and judgments. This is not a proper function of our courts. For instance, in the case at bar a reasonable reading of the record leaves one with the impression that defense counsel's strategy was purposely to create confusion as to when the offenses occurred with the aim of raising a reasonable doubt in the jury's mind in regard thereto.

Appellant's final point is that the trial court erred in denying a motion for mistrial which was occasioned by an allegedly prejudicial question which the prosecuting attorney propounded to the complaining witness. The evidence showed that this witness had been hospitalized for treatment of gonorrhea some time after the statutory rapes had supposedly occurred. During his examination of the witness the prosecuting attorney attempted to elicit the substance of a conversation the complaining witness had with appellant while in the hospital. Defense counsel objected, and out of the hearing of the jury the prosecution made the following offer of proof:

[A]n offer to show that he answered her statement of 'I have gonorrhea' * * with 'Well, then, I'm going to go to a doctor, you know, and check to see if I have it' or words to this effect—

\* \* \* \* \* \*

THE COURT: All right, I'll allow you, but that's * * * where it must end.

Subsequently, in the jury's presence, the prosecutor resumed his questioning of the complaining witness:

Q Do you remember what you told him?

A I told him that I had gonorrhea and he told me that he already knew because my parents had been to see him.

Q Did he indicate to you that he was going to get any medical treatment for his gonorrhea? Uh—I'm sorry—strike that—and I—

MR. TAYLOR: I'm going to—

MR. BIRCH: —apologize—

MR. TAYLOR: —object, Your Honor, and I think after this trend, I'm going to move for a mistrial—

\* \* \* \* \* \*

THE COURT: I think that was an oversight. The jury will disregard that statement of the District Attorney—

MR. BIRCH: I apologize, Your Honor—

THE COURT: —because it was an oversight.[14]

▮▮▮ It is contended that the prosecuting attorney's reference to appellant's gonorrhea "so prejudiced the appellant that at that point the Court should have granted appellant's motion and declared a mistrial." We reach a different conclusion for the following reasons: We are of the opinion that the prosecutor's reference to appellant's gonorrhea was in fact inadvertent. Secondly, the trial judge's prompt direction to the jury to disregard the prosecutor's "oversight," together with the prosecutor's almost simultaneous apology, lessened the danger of the jury's becoming prejudiced

[14]. In the course of his final argument, the prosecutor made the following comments on the venereal disease aspect of the evidence:

Now I—I dislike talking about venereal disease. I think it offends your sensibilities, but it is in this case. Now why is it in this case? The state does not maintain that William Charles Anderson gave Jutta DePew venereal disease. We have not put forth this as a point of evidence. We do maintain that Jutta DePew had venereal disease, gonorrhea. We also maintain that, from Jutta's testimony and the testimony of her friends, she had no contact with other men. None. No dates or anything else. And we further maintain that Anderson was fully apprised of the fact that Jutta had venereal disease and spoke to her friends about it and to Jutta about it. Now we haven't put forth proof that Anderson himself had venereal disease; this I readily admit. And we are not trying to prejudice you by saying 'not only did the man commit the crime of statutory rape, he gave the girl clap, or gonorrhea.' We are saying that this shows that this girl has indeed had intercourse with someone. She had intercourse with someone during this period of time, and that according to the testimony that we've had from the stand she had no access to anybody else. And we leave it to you, ladies and gentlemen of the jury, to draw your conclusion as to whether Anderson had intercourse with Jutta DePew.

against appellant.[15] Further, the trial judge's denial of appellant's motion is sustainable on the ground that there was sufficient evidence in the record (aside from the prosecutor's incompetent remark), from which the jury could have found appellant guilty of the crimes charged. The determination of whether a mistrial should be granted rests largely in the trial judge's discretion.[16] Viewing the context within which the prosecutor made the questioned remark against the entire record in the case, we cannot say that we are left with the firm conviction that the trial judge erroneously decided appellant's motion for mistrial.

The judgment and commitment is affirmed.

15. The "general rule" is that where the trial judge withdraws improper testimony from the jury's consideration, such an instruction is presumed to cure any error which may have been committed by its introduction. People v. Carner, 144 Cal.App.2d 687, 301 P.2d 623, 626 (1956); Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141 (1880).

In People v. McKelvey, 85 Cal.App. 769, 260 P. 397, 398 (1927), the court laid down one test:

It has also been held that in certain cases where the incompetent evidence goes to the main issue, and where the proof of defendant's guilt is not clear and convincing, the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence.

Mora v. United States, 190 F.2d 749 (5th Cir. 1951), and Holt v. United States, 94 F.2d 90 (10th Cir. 1937), are relied upon by appellant. These decisions are in accord with the criterion outlined in People v. McKelvey. In our opinion the factual situation in the case at bar is distinguishable from that of McKelvey.

16. In Otis Elevator Co. v. McLaney, 406 P.2d 7, 10 (Alaska 1965) (footnote omitted), this court said:

The trial judge, in his discretion, is best able to determine whether there was any intentional misconduct on the part of McLaney's counsel and to evaluate the probable impact of counsel's questioning upon the jury in ruling upon a motion for new trial. We have held on other occasions that the granting or refusing of a motion for a new trial rests in the sound discretion of the trial judge and that we will refrain from interfering with the exercise of such discretion except 'in the most exceptional circumstances to prevent a miscarriage of justice.' Our reading of the record fails to disclose such exceptional circumstances as would lead us to reverse the trial judge's denial of a new trial on the grounds of counsel's improper questioning.

See McCracken v. State, 431 P.2d 513 (Alaska 1967); Pedersen v. State, 420 P.2d 327, 333 (Alaska 1966).