[No. A041563. First Dist., Div. Two. May 9, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
TRECINE LANKFORD, Defendant and Appellant.

230

**COUNSEL**

Alys Briggs, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David

D. Salmon and Gerald A. Engler, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**PETERSON, J.**—Appellant Trecine Lankford was convicted of possession of a concealable handgun by an ex-felon (Pen. Code, § 12021). The information also alleged that appellant had served five prior prison terms. (Pen. Code, § 667.5, subd. (b).) Appellant admitted a prior felony conviction, and the jury found that he was in possession of a concealable handgun. He also admitted the alleged priors. The superior court sentenced appellant to state prison for four years, which sentence was ordered to run concurrently with appellant's ten-year sentence in another case.

A police officer testified that when he stopped appellant for speeding he observed a concealable handgun on the front seat of the car. Appellant was the driver and sole occupant of the car. The handgun was not loaded, and neither ammunition nor clip was found. Appellant was the sole witness for the defense. He testified that the gun did not belong to him, and that he first became aware of it when he was stopped by the police after he had driven a wounded stranger to the emergency room of Highland Hospital. On rebuttal the People presented the hospital records which disclosed that at the material times no wounded person was admitted to Highland Hospital with the injuries described by appellant. Other facts are stated below.

Appellant contends that he was improperly impeached with pending armed robbery and assault charges, and that sentencing error occurred.

 In affirming the conviction, we will hold that, where the defendant in a criminal case offers evidence of specific acts affecting his credibility and good character, the prosecution is not prohibited from impeaching him with evidence of relevant specific instances of his conduct; that no reversible error occurred by reason of the trial court's failure on the record to weigh and balance prosecution impeachment evidence as required by Evidence Code section 352;[1] and that the sentencing error which occurred was harmless.

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Evidence Code.

## I. IMPEACHMENT

### A. *Facts and Proceedings*

At the start of trial, the superior court ruled, *in limine,* that the prosecution could examine appellant on only one of his six prior robbery convictions for impeachment purposes, if appellant testified.[2]

Appellant chose to disclose that prior felony conviction on his direct examination rather than have such disclosure made on the prosecution's cross-examination. Such trial strategy is believed by some to minimize the expected adverse effect of the conviction, inevitably to be exposed, by demonstrating to the jury defendant's honesty and candor as to adverse matters.

Appellant, however, went beyond testifying to his prior conviction. After stating, in response to his counsel's question, that he had previously been convicted of the felony and had served a term in state prison therefor ("Yes, I served time."), he added this statement, *"I didn't have no incident yet since I've been out."* (Italics added.)

Shortly after this testimony and outside the presence of the jury, the district attorney asked permission to question appellant about an immediately pending trial for five counts of armed robbery and one count of assault with a deadly weapon. Defense counsel objected on relevancy grounds and pursuant to section 352. He argued, in part, that by "incident" appellant meant "prison terms."[3] The court overruled all the objections on the ground that appellant had opened up the area of his conduct, and that it would be unfair to leave the jury with the impression he had "been on his good behavior" since being released from prison.

When the jury returned, appellant was questioned as follows: "Q. Mr. Lankford, on the direct examination you answered a question by your attorney by saying, after he asked you if you were convicted of a felony and served a term in state prison, by saying 'I haven't had an incident yet since I've been out'; is that correct? [¶] A. Yes, I mean conviction. [¶] Q. Is it correct that you said 'I haven't had an incident'? [¶] A. That is correct. [¶] Q. 'An incident since I've been out'? [¶] A. That's right. [¶] Q. Isn't it true, sir, that on the 2nd day of September this year, seven days from now, you

---

[2] Section 788 provides: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness . . . that he has been convicted of a felony . . . ."

[3] Appellant did not attempt to convert "incident" to a synonym for "conviction" until his cross-examination before the jury was resumed following the nonjury hearing in which the court favorably considered the prosecution's motion to permit the requested impeachment. See quoted testimony, *post.*

are scheduled to stand trial in this county for five counts of armed robbery and one count of assault with a deadly weapon? [¶] A. Yeah, allegedly, right. I do supposed to stand trial, right."

Having thus taken the initiative to steal the prosecution's thunder by being the first to expose a prior conviction obviously denigrating his credibility and character, appellant conceded he had served a term in prison for the felony conviction; but stated, "I didn't have no incident yet since I've been out."[4]

### B. *The Court Was Not Compelled to Treat Defense Counsel's Statements as a Motion to Strike Appellant's Testimony*

We reject appellant's contention that defense counsel's request of the court ("May that be a yes or no answer?") should have been treated as a motion to strike appellant's statement as to "no incident."

A motion to strike must point with specificity to the ground of objection and the particular portion of the evidence deemed objectionable. (§ 353, subd. (a); 3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 2024, p. 1986.) Defense counsel's statement did neither. No proper motion to strike having been made to this portion of appellant's answer, the statement remained in evidence.

### C. *The "No Incident" Statement and the Impeachment Evidence Were Relevant on the Issues of Appellant's Credibility and Disposition to Commit the Crime Charged*

In *People* v. *Wagner* (1975) 13 Cal.3d 612 [119 Cal.Rptr. 457, 532 P.2d 105], the Supreme Court resolved the troublesome question of whether and when the type of character evidence introduced herein by both sides is *relevant*. (See 3 Witkin, Cal. Evidence, *supra*, Introduction of Evidence at Trial, §§ 1993-1994, pp. 1952-1955, and cases cited therein.)

*Wagner* was a prosecution for selling marijuana. The People's case-in-chief included evidence "regarding the characteristics of persons who become major drug dealers as well as the lucrative nature of narcotics sales." (*People* v. *Wagner, supra,* 13 Cal.3d at p. 616.) Defendant countered by testifying "at length in narrative form as to his background, family, business and civic activities, [and] the worth of his business . . . ." (*Ibid.*) The prosecutor cross-examined him by asking whether he had sold or possessed narcotics. "By their very nature the questions suggested to the jurors that

---

[4] No claim of instructional error is made on this appeal.

the prosecutor had a source of information unknown to them which corroborated the truth of the matters in question." (*Id.* at p. 619.)

The Supreme Court held that "[c]ontrary to defendant's initial contention, he did place his character in issue by giving testimony on direct examination as to his civic activities, family background, and like matters" (13 Cal.3d at p. 617); that such evidence of the defendant's good character was relevant evidence on the question of whether he had committed the charged offense; and that he could be impeached with bad character evidence. "When a defendant testifies in his own behalf, his character *as a witness* may be impeached in the same manner as any other witness. [Citations.] Moreover, when the defendant, as in the present case, has injected the issue of his *good moral character* into the case by direct testimony, the prosecution may rebut by introducing evidence of the defendant's bad moral character. (Evid. Code, § 1102, subd. (b); [citation].)" (*Id.* at p. 618.) The Supreme Court reasoned that Wagner's testimony about "his family and civic activities . . . . constituted an attempt to show that he was not likely to commit, and therefore did not commit, the crime charged . . . . A defendant cannot bar the prosecution from rebutting favorable character evidence merely by characterizing the direct examination as being narrower in scope than in fact it was. . . . [D]efendant placed his character in issue." (*Id.* at p. 617.)

Thus *Wagner* promulgated these conclusions: (1) Defendant's direct testimony as to his background, family, business and civic activities was relevant character evidence on the issue of defendant's disposition to commit, and his commission of, the charged crime; cross-examination of defendant as to his prior criminal activity, while inadmissible, was relevant on the same issue; such cross-examination was also relevant, but inadmissible, on the issue of defendant's credibility as a witness. (2) When a defendant presents favorable evidence regarding such matters, he can be impeached with unfavorable evidence regarding such matters.

■ As in *Wagner* appellant attempted to prove his credibility by testifying to relevant specific conduct designed to show his recent good moral and law-abiding character through a lack of criminal activity after his prison release ("no incident"). The same evidence was, however, also relevant for another purpose: i.e., because he was not involved in any criminal "incident" post-prison release, he was of at least recent good moral character; was, consequently, unlikely to commit the charged crime; and hence, did not commit it.

The prosecution impeachment evidence showed appellant's conduct to consist of sufficient involvement in criminal "incident[s]," after his prison

release, to precipitate six felony charges which were pending against him for immediate superior court trial. Such evidence was relevant to impeach appellant's credibility as a witness, and to rebut any contention his conduct post prison release showed him to be of good moral character and not, therefore, likely to commit the crime charged.

■ We turn to the question of whether this relevant evidence was *admissible*.

## D. *Sections 787 and 1102*

In *Wagner* the prosecutor, on cross-examination, inquired into specific acts of misconduct on defendant's part. Prosecution questions concerning specific acts of defendant's misconduct were held to be improper for purposes of impeachment. The court explained, "section 787 provides that, save only as to convictions of a felony: '. . . evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness.'" (13 Cal.3d at p. 618.)

The court then turned to the statute governing the admissibility of character evidence to prove conduct. "Under Evidence Code section 1102, in a criminal case evidence of the defendant's character 'in the form of an opinion or evidence of his reputation' is admissible when '(a) Offered by the defendant to prove his conduct in conformity with such character . . .' and '(b) Offered by the prosecution to rebut . . .' the defendant's character evidence. As the Law Revision Commission's comments to section 1102 make clear, evidence of specific acts of the accused are, as a general rule, inadmissible to prove his disposition to commit such acts (see also Evid. Code, § 1101); this general rule is applicable 'even though the defendant has opened the question by introducing evidence of his good character.' [¶] The above rule[] [precludes] the admission into evidence of specific acts of conduct to show defendant's bad moral character . . . ." (13 Cal.3d at pp. 618-619.)

Thus *Wagner* held that the character evidence in issue was rendered inadmissible by sections 787 and 1102; each of which proscribed proof of the proffered specific instances of defendant's conduct, even though the evidence was relevant to credibility and character.

If *Wagner* were still valid precedent on the question of admissibility, the instant case would be resolved since appellant was also impeached with proof of specific acts. ■ However, there have been significant changes

in the law since *Wagner*. Effective June 9, 1982,[5] the electorate added article I, section 28, subdivision (d) (hereafter section 28(d)) to the California Constitution by means of Proposition 8. Section 28(d) provides in pertinent part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded in any criminal proceeding,* including pretrial and post conviction motions and hearings, or in any.trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103." (Italics added.)

In *People v. Taylor* (1986) 180 Cal.App.3d 622 [225 Cal.Rptr. 733], the Court of Appeal in the Third Appellate District considered the effect of the above constitutional provision on section 790.[6] The defendant in that case, an orderly at a school for handicapped students, was convicted of the rape of a mentally incompetent person. (Pen. Code, § 261, subd. (1).) He moved to introduce evidence of his reputation for truth and veracity to prove the truthfulness of his testimony, although no prosecution evidence impeaching his character for truth and veracity had been introduced. Defendant's motion was denied on the authority of section 790 because the prosecution had not attacked his credibility with evidence of his bad character.

In reversing, *Taylor* reasoned that "Evidence Code section 790 does not render evidence in support of defendant's credibility irrelevant; it simply restricts its admissibility." (180 Cal.App.3d at p. 630.) The statute was, therefore, repealed by the plain language of section 28(d). The court further opined that its conclusion was supported by the ballot summaries and arguments in favor of Proposition 8 and by the Supreme Court opinion of *In re Lance W.* (1985) 37 Cal.3d 873, 886, 889 [210 Cal.Rptr. 631, 694 P.2d 744]. (*People v. Taylor, supra,* 180 Cal.App.3d at pp. 631-632.)

Like *Taylor, People v. Adams* (1988) 198 Cal.App.3d 10 [243 Cal.Rptr. 580], decided by this court, was a case in which the defense, not the prosecution, sought the benefit of section 28(d). The defendant, who was charged with rape, claimed that the prosecutrix had consented to sexual acts in exchange for cocaine and filed a false rape complaint when he refused to provide it.

The defendant's attempt to show that the alleged victim had in the past falsely accused others of rape was rejected on the ground that, under section

---

[5] *People v. Smith* (1983) 34 Cal.3d 251, 257 [193 Cal.Rptr. 692, 667 P.2d 149].

[6] "Evidence of the good character of a witness is inadmissible to support his credibility unless evidence of his bad character has been admitted for the purpose of attacking his credibility." (§ 790.)

787,[7] a prosecution witness could not be impeached by evidence of specific acts relevant only to character. *Adams* adopted the reasoning of *Taylor* and held that section 787 was invalidated by section 28(d); i.e., evidence of the victim's prior specific acts of falsely accusing others of rape was relevant and admissible on the issue of her credibility, manifested through a claimed character trait of dishonesty and falsely accusing others of rape. The purpose of section 28(d), we reiterated, was to liberalize the rules of admissibility of evidence in criminal cases " 'to ensure that those who are actually guilty do not escape conviction through restrictions on the admissibility of relevant evidence. . . . (*In re Lance W.* [1985] 37 Cal.3d [873], 887, fn. 7 [210 Cal.Rptr. 631, 694 P.2d 744].)' (*People* v. *Taylor, supra,* 180 Cal.App.3d at p. 632.)." (*People* v. *Adams, supra,* 198 Cal.App.3d. at p. 18.)

Although *Taylor* and *Adams* are cases in which defendants successfully utilized the provisions of section 28(d) to overcome the prohibition of sections 790 and 787 (which restricted the admissibility of proffered defense evidence), nothing in those cases or in section 28(d) itself warrants different treatment of evidence proffered by the prosecution.

In *People* v. *Harris* (1989) 47 Cal.3d 1047 [255 Cal.Rptr. 352, 767 P.2d 619], our Supreme Court considered the impact of section 28(d) on prosecution evidence. *Harris* was a death penalty case in which a paid police informant testified against the defendant. Thereafter, a police officer testified that the informant had provided reliable information on prior occasions. On appeal, the defendant argued that the police officer's testimony establishing the informant's reliability was inadmissible under sections 787 and 1101, subdivision (a) (hereafter 1101(a)).[8] The People responded that these sections were repealed by section 28(d) to the extent they limit admissibility of relevant specific acts of conduct. The Supreme Court held that the evidence was properly admitted because "section 28(d) effected a pro tanto repeal" of sections 786, 787 and 790.[9] (*Id.* at pp. 1081-1082.) The exclusion-

---

[7] "[E]vidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness." (§ 787.)

[8] Section 1101 provides: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) *is inadmissible when offered to prove his or her conduct on a specified occasion.* [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act. [¶] (c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." (Italics added.)

[9] *Harris* implies that sections 788 and 789 may also be repealed, but its holding is limited to sections 786, 787 and 790. (*People* v. *Harris, supra,* 47 Cal.3d at pp. 1081-1082.) Section 788

ary effect of those sections was not preserved by section 28(d), the court stated, "when the evidence relates to a witness's conduct, *but is offered to attack or support the credibility of the witness.*" (*Id.* at p. 1081, italics added.) *Harris* reserved the question of whether, by implication, section 28(d) preserved section 1101(a) because of the reference to section 1101 in section 1103,[10] as to which section 28(d) provides: "Nothing in this section shall affect . . . Evidence Code, [Section] . . . 1103."

The defendant in *Harris* sought to invoke "the rule that 'evidence of specific instances of a person's conduct is inadmissible to prove that on a particular occasion he acted in conformity with the trait of character indicated by his prior specific acts. (Evid. Code, §§ 1101, subd. (a), 787.) Thus, such evidence could not be introduced as proof of a witness' character for honesty or veracity, or their opposites, for the purpose of supporting or attacking the witness' credibility. (Evid. Code, § 787.)' (*People* v. *Antick* (1975) 15 Cal.3d 79, 96 [123 Cal.Rptr. 475, 539 P.2d 43]. . . .)" (*People* v. *Harris, supra,* 47 Cal.3d at pp. 1080-1081.) In reserving the question of whether section 28(d) preserved section 1101(a), *Harris* did not comment on three appellate court opinions which have discussed that issue.

*People* v. *Perkins* (1984) 159 Cal.App.3d 646 [205 Cal.Rptr. 625] (hg. den.) observed that, because section 1103 contains an exception to section 1101, it was illogical to assume one was excepted without excepting the other. "Section 1103 cannot exist as an exception to a nonexistent rule." (*Id.* at p. 650.) Accordingly, *Perkins* held that section 1101 was an implied exception to section 28(d) and enforceable as not in conflict with it.

In *Newman* v. *Superior Court* (1986) 179 Cal.App.3d 377 [224 Cal.Rptr. 538] (hg. den.), defendant was jointly charged with the alleged rape of two women. He moved for separate trials as to each alleged violation. Division Four of this court, finding no abuse of the lower court's discretion in rejecting defendant's motion, denied his petition for writ of mandamus to compel such severance of charges. The *Newman* court reviewed *People* v.

deals with prior convictions and credibility, a subject covered in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. Section 789 provides: "Evidence of his religious belief or lack thereof is inadmissible to attack or support the credibility of a witness." It appears that the holding of *Harris* does not eliminate the applicability of section 787 in civil cases. (See *People* v. *Wall* (1979) 95 Cal.App.3d 978, 988-989 [157 Cal.Rptr. 587].)

[10] Section 1103, subdivision (a), provides: "In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted *is not made inadmissible by Section 1101* if such evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with such character or trait of character. [¶] (2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1)." (Italics added.)

*Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], where the Supreme Court held that evidence of the defendant's commission of uncharged sex crimes against other victims was inadmissible to corroborate the prosecuting witness's testimony, or to show the defendant's alleged common design or plan. *Newman* then observed that *Tassell* had not considered the effect of section 28(d) on the admissibility of such evidence, the alleged offenses in *Tassell* having occurred before the adoption of section 28(d), and cited *Perkins* as holding that section 1101 was not abrogated by section 28(d).

In *People* v. *Scott* (1987) 194 Cal.App.3d 550, 554-555 [239 Cal.Rptr. 588], the court observed, by way of footnote, that the reliance in *Perkins* on *judicial* rules of construction to save section 1101 was "overdrawn." However, the *Scott* court reached the same result on a different ground; i.e., that in 1986 the Legislature, by more than a two-thirds vote of each house, "effected a reenactment of section 1101 by an amendment adopted for the express purpose of clarifying the interpretation given Evidence Code section 1101 by the *Tassell* case . . . ." (*Id.* at p. 554.)

Despite defendant's reliance on section 1101(a), the *Harris* court treated the prosecution's evidence of specific instances of the informant's past reliability as relevant to the informant's credibility although related to his conduct. (47 Cal.3d at p. 1081.)

The particulars of the specific instances of the informant's past conduct are not set forth in *Harris*. ▮ There is thus a lack of clarity as to the relationship between his past *conduct* as an informant and his *credibility* as a witness, although past conduct as a reliable informant may arguably involve matters other than simply the informant's credibility as a witness.[11]

The *Harris* court recognized the prosecution sought to prove, by the police officer's testimony, that his informant was reliable at trial because of specific instances of his conduct as a reliable informant in the past; found such evidence was offered for the purpose of proving the informant's *credibility* as a witness at trial; and held such evidence admissible although it "relates to a witness's conduct" despite the provisions of section 1101(a), which proscribe proof of character to prove conduct on a specified occasion

---

[11] Proof of the reliability of an informant may involve such things, for example, as his general and personal contacts and associations with criminal activities and those on whom he informs, his ability to perceive and recall accurately the details of criminal matters as to which he is furnishing information, his willingness to accept the role and concomitant danger of informant, and the accuracy of his observations and information weighed against other known facts and data.

(with exceptions not here relevant), and of section 1102[12] restricting the form of proof of character to opinion or evidence of reputation.

■ Assuming, arguendo, that section 1101(a) survives section 28(d) on the rationale of either *Perkins* or *Scott,* we nonetheless hold, consistent with *Harris* and *Adams,* that the prosecution evidence in this case of prior specific acts of appellant's conduct was properly admitted on the issue of his credibility, even though such evidence also related to appellant's prior conduct that rebutted evidence of his recent good moral character.[13]

We next discuss the applicability of section 352 to the impeaching prosecution evidence.

E. *The Trial Court's Failure to Weigh and Balance the Prejudicial Impact of the Prosecution Impeachment Evidence Against Its Probative Value Was Harmless Error*

The prosecution evidence indicated that, despite his claim of "no incident" since his last release from prison, appellant was in fact about to be tried on five counts of armed robbery and one count of assault with a deadly weapon. Appellant volunteered this "no incident" testimony to falsely embellish his credibility as a witness with specific acts of his recent good conduct and character (i.e., a lack of criminal activity, and a record of good behavior post release from prison on the prior conviction he himself introduced). The prosecution impeachment evidence directly dispelled this false or misleading evidence of credibility introduced by appellant.

■ A defendant who chooses to introduce false or misleading evidence of his credibility risks prosecution rebuttal of that evidence by proof of relevant specific acts of his conduct. When such impeaching evidence is offered, a motion to exclude it under section 352[14] is always committed to the exercise of the trial court's sound discretion.

Section 352 was not affected by Proposition 8. Appellant moved to exclude the prosecution impeachment evidence under that section. The trial

---

[12]Section 1102 provides: "In a criminal action, evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by Section 1101 if such evidence is: [¶] (a) Offered by the defendant to prove his conduct in conformity with such character or trait of character. [¶] (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)."

[13]We do not decide the question of whether the reference in section 28(d) to section 1103 acted to preserve section 1102, because section 1102 is referred to in section 1101. Section 1101, as *Harris* observes (47 Cal.3d at p. 1081), is expressly mentioned in section 1103.

[14]"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

court was then required to "discharge its statutory duty . . . by weighing the statement's potential for prejudice against its probative value and concluding that the latter was not 'substantially outweighed' by the former." (*People* v. *Green* (1980) 27 Cal.3d 1, 24 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ Appellate courts have repeatedly said that trial courts must discharge that duty on the record so that appellate courts have "the record necessary for meaningful review of any ensuing claim of abuse of discretion; an additional reason is . . . to 'promote judicial deliberation before judicial action' [citation]." (27 Cal.3d at p. 25.)

■ The record in this case fails to show the court engaged in this required weighing process before admitting the impeachment evidence.

However, if we assume, arguendo, that the prejudicial effect of such impeachment testimony outweighed its probative value, any error in its admission was nonetheless harmless. (See *People* v. *Carner* (1956) 144 Cal.App.2d 687, 692-693 [301 P.2d 623].) The case was obviously not a close one; no grave doubt of appellant's guilt existed.

Both parties agree an illegal handgun was in appellant's car. Appellant's explanation essentially was that he did not become aware of the gun in plain view beside him on the front seat of his automobile until stopped by the police, and he implicitly suggested that a wounded stranger he had driven to Highland Hospital emergency room prior to the stop must have been the gun's owner. The Highland Hospital records disclosed no such admission of a wounded person at the material time.

Appellant's explanation of how the gun came to be in the car is most aptly characterized by a quotation from an opinion authored by Justice Kaus: "His defense would have strained the credulity of the most gullible jury." (*People* v. *Joiner* (1976) 54 Cal.App.3d 910, 916 [127 Cal.Rptr. 166].) We cannot find any reasonable probability appellant would have received a verdict more favorable if the impeaching evidence concerning his pending charges had been excluded. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

## II. SENTENCING ERROR

■ Appellant contends the superior court "erred in sentencing [him] to the aggravated term by reliance upon misconception of the facts of the offense." This contention has merit, but the error is harmless.

The superior court stated that it was sentencing appellant to the upper term "because the gun had bullets in it." Thus there was error since the

evidence was that the gun was unloaded. However, the record discloses that the superior court was not, in any event, disposed to give a lesser sentence. The only sentencing choice it considered was whether to make the instant sentence consecutive or concurrent to a 10-year prison term in another case, and it imposed a concurrent sentence. Accordingly, the error is harmless. (*People* v. *Mobley* (1983) 139 Cal.App.3d 320, 324-325 [188 Cal.Rptr. 583]; *People* v. *Axtell* (1981) 118 Cal.App.3d 246, 259 [173 Cal.Rptr. 360].)

## III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 9, 1989.