[Crim. No. 4585.    Third Dist.    Feb. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. FRANCIS M. OGG, Defendant and Appellant.

Richard A. Case, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Robert J. Sullivan, Deputy Attorneys General, for Plaintiff and Resopndent.

REGAN, J.—Defendant was charged with the crime of murder of the second degree and, in a separate count, with manslaughter. A prior conviction of murder of the second degree was charged and was admitted by defendant. Defendant was found guilty by a jury of voluntary manslaughter. He appeals from the judgment of conviction.

Defendant and the decedent, Nick Derania, had known each other for many years. Since 1965 defendant was a regular patron of the Southside Club in Sacramento, of which Derania was a part owner.

About 6 p.m. on February 27, 1967, defendant went to the Southside Club. As defendant drank, Derania was shooting pool. Defendant hurled abuses at Derania during this period. Derania, dragging his pool cue, then approached defendant and suggested he leave. Defendant started to leave. Derania said, "Good night, Francis." Derania started to turn around. At that point defendant struck Derania and knocked him to the floor. Derania died shortly thereafter from a fractured skull. The fracture had resulted when his head struck the floor.

The case went to the jury on May 15, 1967, and on that day the jury returned to the courtroom several times for re-reading of testimony and instructions. At 11:40 p.m. the jury

reported a deadlock of six and six. The court allowed the jury to rest until the following morning when it resumed its deliberations. At 11:18 a.m. they reported that they were still deadlocked the same way on the manslaughter charge, although they had arrived at a conclusion on the murder charge. The court then asked if there was any possibility of arriving at a verdict. The foreman responded that there was not. Court and counsel retired to chambers. When they returned the court told the jury to bring in the verdict at which they had arrived. He then gave the written instructions to them to take into the jury room. They retired at 11:36 a.m. and finished deliberating about 3:14 p.m., at which time verdicts on both counts were returned.

■ Defendant claims it was error to allow the jury to take the written instructions into the jury room. It was not error to do so. Section 1137 of the Penal Code provides: "Upon retiring for deliberation, the jury may take with them . . . the written instructions given . . . ." (See *People* v. *Gray*, 52 Cal.App.2d 620, 650 [127 P.2d 72]; *People* v. *Dunlop*, 27 Cal.App. 460, 469 [150 P. 389]; *People* v. *Welborn*, 242 Cal.App.2d 668, 677 [51 Cal.Rptr. 644].)

■ Defendant next claims error in the overruling of his objection to an alleged leading question.

The witness, Kenneth Batten, testified that after the defendant struck Derania, he said to Batten, "You're next." This could be construed as a threat directed toward Batten. The question which defendant contends is leading merely asked whether or not defendant had threatened any of the other persons present at the time Derania was struck and defendant threatened Batten. The district attorney's use of the word "threatened" was consistent with Batten's prior testimony and could not be said to have suggested an answer not already present in the mind of Mr. Batten.

This line of questioning was material and relevant to establish by circumstantial evidence defendant's aggressive state of mind when he struck Derania. The threats to which Batten testified were made immediately after defendant had struck Derania; this, together with their spontaneity, guarantees their trustworthiness and hence their relevance.

■ Defendant next claims that a question asked of Thelma Nieri, a character witness for the defense, was irrelevant and argumentative. She was asked if she and defendant lived together. Relevant evidence includes evidence bearing on the credibility of a witness. (Evid. Code, § 780.) Showing bias

is a proper means of impeaching a witness. (Evid. Code, § 780.) There is no question that an extramarital relationship between defendant and his witness is relevant to show bias. .(*People* v. *Sweeney,* 55 Cal.2d 27, 41 [9 Cal.Rptr. 793, 357 P.2d 1049].) This claim of error cannot be sustained.

Defendant next contends that several other questions asked of Mrs. Nieri were improper because they referred to specific wrongful acts of the defendant. In attempting to impeach her credibility still further, the prosecutor asked her, ''Have you heard that he's utilized his fists to strike his youngster in the face, knocking him unconscious?'' and ''Have you heard that he killed his wife in Los Angeles by use of his fists?'' Although it is improper to ask a character witness if he knows as a fact that the defendant has performed certain wrongful acts, nevertheless he may be questioned as to whether he has heard rumors or reports of wrongful acts of defendant. This is ''relevant to his [the witness'] qualifications to speak on the defendant's reputation.'' (*People* v. *Caldaralla,* 163 Cal.App.2d 32, 41 [329 P.2d 137].)

Defendant, on cross-examination, was asked whether he had been convicted of any felonies. He answered in the affirmative. He was then asked as to the nature of the felonies. No objection was made to this questioning. The questioning was proper. The name of the crime for which a defendant was convicted may be shown. (*People* v. *Propp,* 235 Cal.App.2d 619, 632 [45 Cal.Rptr. 690].)

Defendant claims there was improper evidence of defendant's character. On rebuttal the prosecutor asked Gene Placus about defendant's reputation for peace and quiet. Placus responded, ''Well, I'd say violent.'' On cross-examination counsel brought out that the only thing Placus had heard regarding defendant's reputation was that defendant had, on an occasion prior to the one in issue, knocked out the decedent for about fifteen minutes. Counsel at this point objected to all the prior testimony concerning general reputation. The court then established that Placus had heard many people speak about the incident and the motion was denied.

There was no error in allowing this testimony. Once defendant has offered evidence of his character to prove that he acted in conformity with that character, the prosecution may, also, offer evidence of defendant's character in order to rebut the evidence for the defense. (Evid. Code, § 1102, subd. (b).) We hold that this evidence was admissible, without

determining whether it was an opinion of the witness or his statement of defendant's reputation regarding the character trait in issue. Either type of testimony is proper in this situation. (Evid. Code, § 1102.)

The other challenged rebuttal evidence was the testimony of Thomas Romero. Romero testified that in his opinion defendant was a violent man. Counsel on cross-examination showed that the only specific act on which Romero based his opinion was a fight which took place twenty-eight years before the trial. Counsel moved to strike this opinion evidence, but the court denied the motion when it determined that Romero had been intimately acquainted with defendant, ruling that this went to the weight and not to the admissibility.

Defendant cites no cases supporting his challenge. Nor have we found any. This absence of case law is doubtlessly a product of the fact that prior to enactment of the Evidence Code opinion testimony was generally held inadmissible to prove character as circumstantial evidence of conduct. (See Deering's Ann.Evid.Code, Law Revision Commission Comments to § 1102; *People* v. *Spigno,* 156 Cal.App.2d 279, 291 [319 P.2d 458].)

As already stated, since defendant had opened up the issue of his character as a factor in disproving the charge against him, rebuttal evidence in the form of opinion was proper. (Evid. Code, § 1102, subd. (b).) Of course the witness' opinion is of no value if formed in a vacuum. ■ A nonexpert witness may testify as to his opinion only if that opinion is based on his own perception. (Evid. Code § 800, subd. (a) ; *Stuart* v. *Dotts,* 89 Cal.App.2d 683, 686-687 [201 P.2d 820].)

We do not reach the issue of this witness' qualifications to testify. ■ If counsel had wanted to exclude Romero's testimony because of his lack of qualification to offer an opinion about defendant, he should have explored his acquaintanceship with defendant by way of *voir dire* or challenged the direct examination either by way of objection or by way of motion to strike as soon as direct examination was closed. (See *People* v. *Wilson,* 76 Cal.App. 688, 706-707 [245 P. 781] ; 2 Wigmore on Evidence (3d ed.) § 586; Evid. Code, § 353, subd. (a).) The motion to strike ''should have been made as soon as the direct examination was closed. Appellant's counsel could not take the chance of a cross-examination and then move to strike out. [Citing cases.] 'The practice, whether in civil or criminal cases, of deliberately permitting evidence to be given without objection in the first instance, and then mov-

ing to strike it out on grounds which might readily have been availed of to exclude it when offered, is not to be tolerated.' (*People* v. *Long,* 43 Cal. 446.)'' (*People* v. *Wilson, supra,* at p. 707.)

█ Defendant's final objection is to an attempt to impeach him on cross-examination by reference to statements he purportedly made in a conversation with Placus and a parole or probation officer about two weeks after he first knocked out Derania. The following questioning occurred: ''Q. Now, Mr. Ogg, let me recall to your recollection approximately two weeks after the first time that you knocked out Mr. Derania with one punch, about October, 1966. Do you recall about two weeks after that incident going to the Corker Club and being present there with a parole officer and Gene Placus? A. At the Corker Club? Q. At the Corker Club. A. A parole officer? A. [Q] I believe so, or a probation officer. A. No. Q. Where Mr. Gene Placus was criticizing you about—'' At this point defense counsel objected to the testimony on the ground of irrelevancy. The prosecutor then made an offer of proof. He stated ''I want to ask him with reference to a time two weeks after the incident wherein he knocked out Mr. Derania in October of 1966, whether or not he recalls being criticized for this act, and then he made a statement, and the other individual that was present told him that he shouldn't do those sort of things and again Mr. Ogg made a certain statement which would be relative to his state of mind.'' Upon determining that this evidence bore on the question of fear or apprehension of defendant as to the decedent, the court overruled the objection.

Cross-examination continued, and, in response to the prosecutor's leading questions, defendant denied that he had any recollection of any such meeting with Placus and the officer and of any such criticism. He further denied such a conversation at any time. By this interrogation counsel was laying a foundation to ask if the following statement was made: ''I'll knock that punk out again.'' Defendant testified that he did not remember making such statement. On rebuttal Placus testified that the meeting mentioned by counsel took place, and that defendant made the statement in question.

Defendant claims that his state of mind at this time was irrelevant. Relevant evidence is defined as ''evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.'' (Evid. Code, § 210.) This evidence as to defend-

ant's state of mind falls within the definition of the code; Defendant had offered testimony which tended to prove his own frame of mind. He believed that the decedent had been drinking that night, and he testified that he feared him when he was drinking. Such evidence is proper under a plea of self-defense. (See *People* v. *Davis*, 63 Cal.2d 648, 654-656 [47 Cal. Rptr. 801, 408 P.2d 129].) The controverted statement—''I'll knock that punk out again''—was relevant as to state of mind because it had some tendency to disprove a consequential, disputed fact—whether defendant feared the decedent.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.