[Crim. No. 17897. In Bank. Feb. 27, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JOAL WAGNER, Defendant and Appellant.

## COUNSEL

Edgar Paul Boyko, Michael W. Roberts and Boyd E. Hornor III for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHARDSON, J.**—Following a jury trial, defendant was convicted of selling marijuana in violation of Health and Safety Code section 11360. He appeals from the judgment of conviction asserting prosecutorial misconduct during his own cross-examination. We have concluded that prejudicial misconduct occurred and that the judgment should be reversed.

Defendant, an Alaskan businessman, journeyed to California in early 1972, assertedly for reasons connected with his business. While in California, he visited codefendant Dumas, a former employee and close friend. Defendant, Dumas, and the third codefendant, Brown, traveled by automobile to Santa Barbara where, according to the People's evidence, they met with two undercover narcotics agents and made arrangements for the sale of marijuana. A small amount of marijuana was given to the agents at this meeting. On the following evening Dumas and Brown were arrested when they delivered the agreed quantity of marijuana to the undercover agents and defendant was arrested when he subsequently returned to Santa Barbara for the purpose of depositing bail for his codefendants.

At trial, during presentation of the People's case-in-chief, one of the

undercover agents involved in the sale testified regarding the characteristics of persons who become major drug dealers as well as the lucrative nature of narcotics sales. Defense counsel objected to the testimony as irrelevant, but the trial judge overruled the objection and admitted the testimony as evidence of motive tending to show intent. Defendant asserted that although he accompanied Dumas and Brown to Santa Barbara, he was unaware of the illegal transaction and that his limited participation in the subsequent sale was insufficient to implicate him as an accomplice.

Seeking to refute the references to motive defendant testified at length in narrative form as to his background, family, business and civic activities, the worth of his business, his relations with codefendant Dumas, and the events surrounding the sale of the marijuana. While this lengthy direct examination was being conducted the prosecutor made only two objections, otherwise allowing defendant to testify freely. On cross-examination, under the theory that defendant had "opened the door" on the issue of his good character, the prosecutor asked the following questions giving rise to the assertions of error:

"Q. Isn't it true, Mr. Wagner, that in Alaska you are not only in the business of putting up fences, but you are also in the business . . . of furnishing cocaine a drug, for sale, illegally, isn't that correct?.

"Q. . . . Isn't it true that you have in fact sold heroin?

"Q. . . . Isn't it true that in the month of March, 1972, you told your employee . . . not to sell any contraband to anyone he did not know?

"Q. . . . To your knowledge, at your place of business, is there any illegal sale of narcotic activity going on?

"Q. . . . Have you ever heard of the expression 'pure pharmacy' cocaine?

"Q. . . . Isn't it true that on December 30, 1971, that you have received . . . a shipment of 'pure pharmacy' cocaine?

"Q. . . . Now, isn't it true that on December 30, 1971, you had in your possession approximately three kilograms of pure pharmacy cocaine . . ?

"Q. . . . Isn't it true that those three kilograms of cocaine were in a shoebox?"

Defendant answered each of these questions in the negative. Defense counsel objected to most of these questions and further moved, unsuccessfully, for a dismissal and for a mistrial based upon the prosecutor's misconduct in asking these questions. The prosecutor failed to make an offer of proof or to introduce any other evidence substantiating the charges implied by the foregoing questions.

Defendant asserts that this method of cross-examination was improper, since his testimony on direct examination bearing on his personal and business background was limited to rebutting the issue of motive introduced by the prosecution's direct examination of the undercover agent. He argues, accordingly, that since his direct testimony did not place his character in issue, the prosecutor's questions exceeded the scope of proper cross-examination. (See Evid. Code, § 761; *People* v. *Schader*, 71 Cal.2d 761, 769-770 [80 Cal.Rptr. 1, 457 P.2d 841].) He further contends that even if his testimony in this connection may fairly be described as "character" evidence and thus subject to impeachment, the prosecutor was not permitted to impeach in this manner. Defendant maintains that the prosecutor's questions relating to alleged prior specific acts of misconduct on defendant's part, were aimed at insinuating to the jurors that defendant had engaged in prior illegal drug transactions, thereby prejudicing the jurors against him.

■ Contrary to defendant's initial contention, he did place his character in issue by giving testimony on direct examination as to his civic activities, family background, and like matters. If defendant's purpose was solely to refute the prosecution's evidence of the lucrative nature of narcotics sales which inferred that defendant may have had a general financial motive, his testimony properly should have been limited to the subject of his personal wealth, or perhaps his business activities, to negate or minimize any financial motive. Instead, defendant's testimony in this connection ranged more broadly and included his family and civic activities as well. It constituted an attempt to show that he was not likely to commit, and therefore did not commit, the crime charged (see *People* v. *Jones*, 42 Cal.2d 219, 223-224 [266 P.2d 38]), not solely that he lacked financial motive. A defendant cannot bar the prosecution from rebutting favorable character evidence merely by characterizing the direct examination as being narrower in scope than in fact it was. (See *Brown* v. *United States*, 356 U.S. 148, 155-156 [2 L.Ed.2d 589, 596-598, 78 S.Ct. 622, 72 A.L.R.2d 818]; *People* v. *Williams*, 30 Cal.App.3d 502, 510 [106 Cal.Rptr. 324].) Thus, we conclude that defendant placed his character in issue.

When a defendant testifies in his own behalf, his character *as a witness* may be impeached in the same manner as any other witness. (*People* v. *Pike,* 58 Cal.2d 70, 93 [22 Cal.Rptr. 664, 372 P.2d 656]; 3A Wigmore, Evidence (Chadbourn rev.ed. 1970) §§ 890, 891, pp. 654-657.) Moreover, when the defendant, as in the present case, has injected the issue of his *good moral character* into the case by direct testimony, the prosecution may rebut by introducing evidence of the defendant's bad moral character. (Evid. Code, § 1102, subd. (b); *People* v. *Ogg,* 258 Cal.App.2d 841, 845 [66 Cal.Rptr. 289].) We must, therefore, determine whether the cross-examination herein challenged was proper either as impeachment of defendant as a witness or as rebuttal evidence on the issue of character.

### 1. *Impeachment of Defendant as Witness*

In the present case the prosecutor, on cross-examination, inquired into specific acts of misconduct on defendant's part. Evidence Code section 787 provides that, save only as to convictions of a felony: "... evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness." (See *Grudt* v. *City of Los Angeles,* 2 Cal.3d 575, 589-591 [86 Cal.Rptr. 465, 468 P.2d 825].) In the present case the prosecutor made no attempt to show that any of the acts he mentioned in his questioning had resulted in prior felony convictions. Even if some of these acts had resulted in convictions, the prosecutor here exceeded the scope of permissible impeachment, for although he could ask simple questions designed to elicit the name and nature of the crime and the place and date of conviction, he could not inquire into its details. (*People* v. *Smith,* 63 Cal.2d 779, 790 [48 Cal.Rptr. 382, 409 P.2d 222]; see *People* v. *Beagle,* 6 Cal.3d 441, 451-452 [99 Cal.Rptr. 313, 492 P.2d 1].) It is therefore apparent that these questions were not proper for purposes of impeaching defendant as a witness. (See *People* v. *Covert,* 249 Cal.App.2d 81, 90-91 [57 Cal.Rptr. 220]; *People* v. *Blalock,* 238 Cal.App.2d 209, 224 [47 Cal.Rptr. 604]; Witkin, Cal. Evidence (2d ed. 1973 Supp.) § 1237, pp. 556-557; cf. *People* v. *Lavergne,* 4 Cal.3d 735, 743-744 [94 Cal.Rptr. 405, 484 P.2d 77].)

### 2. *Impeachment of Defendant's Character Evidence*

Under Evidence Code section 1102, in a criminal case evidence of the defendant's character "in the form of an opinion or evidence of his reputation" is admissible when "(a) Offered by the defendant to prove his conduct in conformity with such character . . ." and "(b) Offered by

the prosecution to rebut . . ." the defendant's character evidence. ■ As the Law Revision Commission's comments to section 1102 make clear, evidence of specific acts of the accused are, as a general rule, inadmissible to prove his disposition to commit such acts (see also Evid. Code, § 1101); this general rule is applicable "even though the defendant has opened the question by introducing evidence of his good character."

■ The above rule, precluding the admission into evidence of specific acts of conduct to show defendant's bad moral character must, of course, be distinguished from the cross-examination of a *reputation witness.* When a defense witness, other than the defendant himself, has testified to the reputation of the accused, the prosecution may inquire of the witness whether he has heard of acts or conduct by the defendant inconsistent with the witness' testimony. (*People* v. *Wrigley,* 69 Cal.2d 149 [70 Cal.Rptr. 116, 443 P.2d 580]; *People* v. *Eli,* 66 Cal.2d 63 [56 Cal.Rptr. 916, 424 P.2d 356]; *People* v. *Thomas,* 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Malloy,* 199 Cal.App.2d 219, 226-227 [18 Cal.Rptr. 545]; *People* v. *Gin Shue,* 58 Cal.App.2d 625 [137 P.2d 742].) In asking such questions, the prosecutor must act in good faith and with the belief that the acts or conduct specified actually took place. (See *People* v. *Gonzales,* 66 Cal.2d 482, 501 [58 Cal.Rptr. 361, 426 P.2d 929]; *People* v. *Eli, supra,* at p. 79.) The rationale allowing the prosecution to ask such questions (in a "have you heard" form) is that they test the witness' knowledge of the defendant's reputation. (*Michelson* v. *United States,* 335 U.S. 469, 479 [93 L.Ed. 168, 175, 69 S.Ct. 213]; *People* v. *Marsh,* 58 Cal.2d 732, 745 [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Hurd,* 5 Cal.App.3d 865, 879 [85 Cal.Rptr. 718].) This rationale obviously does not apply to situations in which defendant himself is the witness. To allow the prosecution to ask defendant if he had heard reports of his own specific acts would frustrate the policy underlying Evidence Code section 352 which excludes evidence the prejudicial impact of which greatly outweighs its probative value.

■ The impropriety of the prosecutor's conduct in this case was not cured by the fact that his questions elicited negative answers. By their very nature the questions suggested to the jurors that the prosecutor had a source of information unknown to them which corroborated the truth of the matters in question. The rule is well established that the prosecuting attorney may not interrogate witnesses solely "for the purpose of getting before the jury the facts inferred therein, together with the insinuations and suggestions they inevitably contained, rather than for the answers which might be given." (*People* v. *Hamilton,* 60 Cal.2d 105, 116 [32 Cal.Rptr. 4, 383 P.2d 412]; see *People* v. *Perez,* 58 Cal.2d

229, 240-241 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Ney,* 238 Cal.App.2d 785, 796-797 [48 Cal.Rptr. 265]; *People* v. *Miller,* 211 Cal.App.2d 569, 576 [27 Cal.Rptr. 290]; *People* v. *Lo Cigno,* 193 Cal.App.2d 360, 388-390 [14 Cal.Rptr. 354].) It is reasonable to assume that, in spite of defendant's negative responses in the instant case, the jurors were led to believe that, in fact, defendant had engaged in extensive prior drug transactions.

### 3. *Prejudicial Error*

We put the question whether the prosecutor's misconduct constituted prejudicial error, requiring reversal of the judgment. Article VI, section 13, of the California Constitution permits reversal of a judgment only when "after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." In *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], we interpreted the foregoing constitutional expression as mandating that a " 'miscarriage of justice' should be declared only when the court . . . is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

The evidence against defendant consisted primarily of the testimony of the two arresting state narcotics agents and codefendant Brown. One narcotics agent as a witness for the People, testified that defendant's participation in the transaction was substantial and direct. The agent quoted defendant's reference to the price and quantity of the contraband, thereby traversing the arguments of the defendant that in effect he was an uninterested and innocent bystander. The other agent, called as a witness by the defense, testified on cross-examination that defendant made statements during the transaction which would tend to indicate defendant's knowledge and participation. Codefendant Brown, also called as a defense witness, testified that defendant had knowledge of and directly participated in the narcotics sale. Brown, however, also admitted that prior to his testimony he had told defense counsel that defendant was not involved in the sale. On redirect examination, Brown admitted that prior to trial he initiated a conversation with the prosecutor and was informed that although no promises would be made, Brown's testimony for the prosecution would be helpful to him. The only other evidence introduced by defendant as to his ignorance and noninvolvement in the transaction was the narrative testimony of defendant himself, which in sum denied knowledge of, and participation in, the narcotics transaction.

In light of the foregoing record, it is apparent that the question of defendant's guilt depended to a very large degree on the jury's determination of the relative credibility of the witnesses. The highly prejudicial implications arising from the questions asked of defendant on cross-examination could serve only to reduce and impair his credibility and to present him to the jury as a person of criminal tendencies. (See *People* v. *Sawyer,* 256 Cal.App.2d 66, 77 [63 Cal.Rptr. 749]; cf. *People* v. *Ortega,* 2 Cal.App.3d 884, 902 [83 Cal.Rptr. 260].) ■ Since the resolution of defendant's guilt or innocence turned on his credibility *vis-à-vis* that of the prosecution witnesses, the case comes within the rule that a miscarriage of justice has occurred when the case is closely balanced and the acts of misconduct are such as to have contributed materially to the verdict. (*People* v. *Perez, supra,* 58 Cal.2d 229, 247; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 91.) In this case we conclude that it is reasonably probable that the verdict would have been in defendant's favor if the prosecution had not implied, through improper cross-examination, that the defendant had previously engaged in similar illegal acts.

We note in passing that the trial court admonished the jurors "not to draw any inference or make any speculation as to what the answer [to questions asked by the prosecutor to which objections were sustained] might have been. A question is not evidence . . . so just take the position that you never heard it." Subsequently, the jurors were given a form instruction which stated that "You must never speculate to be true any insinuation suggested by a question asked a witness. A question is not evidence and may be considered only as it supplies meaning to the answer." We conclude, however, that neither the admonition nor the form instruction were sufficient to cure the prejudicial effect of the prosecutor's repeated insinuations regarding defendant's past conduct. (See *People* v. *Evans,* 39 Cal.2d 242, 248-249 [246 P.2d 636], involving similar questions asked of a defendant evidently for the sole purpose of getting the presecutor's statements before the jury.)

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.