97 Cal.Rptr.2d 456 (2000)
82 Cal.App.4th 636
The PEOPLE, Plaintiff and Respondent,
v.
Bau A. MOOC, Defendant and Appellant.
No. G023714.
Court of Appeal, Fourth District, Division Three.
June 30, 2000.
As Modified on Denial of Rehearing July 31, 2000.
Review Granted October 18, 2000.
*457 Jeffrey Wilens, under appointment by the Court of Appeal, Irvine, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert Shaw and Marilyn L. George, Deputy Attorneys General, Joseph W. Fletcher, City Attorney for the City of Santa Ana, Hugh Halford, and Denah H. Yoshiyama, Assistant City Attorneys, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
SILLS, P.J.
Bau A. Mooc was convicted of battery on a police officer. He contends the trial court erred when it denied his Pitchess[1] motion, and when it permitted testimony implying that his defense was fabricated by a third party. He also contends his counsel was ineffective, and the abstract of judgment must be modified to correctly reflect the court's order. As we agree the abstract of judgment must be modified and also that prejudicial error occurred, the judgment must be reversed.

I

FACTS
Mooc was in jail under an immigration hold. While he was assigned to the "administrative segregation module"  a special area reserved for difficult inmates  he was discovered in the control room by a guard, and a fight broke out between the two. Another officer responded to the call for help and found Mooc and the guard struggling on the floor. As a result of this incident, Mooc was charged with battery on the officer, Frank Garcia.[2]
In preparing his defense for trial, Mooc filed a motion under Pitchess v. Superior Court, supra, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305, seeking to review the officer's personnel file. His request was predicated on his intention to prove that the officer caused the fight and that he merely defended himself. At the hearing on the motion, the court received a file presented by the Santa Ana City Attorney's Office and represented to be the personnel file of the officer in question, retreated to chambers to review it for examples of previous complaints against the officer or evidence of dishonesty, and then denied the motion.
At trial, the defense called two inmates, Le and Vo, who witnessed the assault and who testified Garcia had caused the fight. The prosecutor asked each witness whether another inmate, Solis, had suggested they blame Garcia for the altercation. Both witnesses steadfastly denied any such suggestion was made by Solis or anyone else. Contrary to representations by the prosecutor that another inmate by the name of Puskas would prove that Solis made such a suggestion, no evidence was ever presented by the prosecution to support the idea that Le and Vo  on Solis's suggestion  fabricated the charge that Garcia started the fight. The jury convicted Mooc of the battery.

*458 DISCUSSION

II

Denial of the Pitchess Motion
Mooc argues reversal is required because the trial court abused its discretion in denying his motion brought under Pitchess v. Superior Court, supra, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 to divulge the relevant contents of Garcia's personnel file. Criminal defendants have a right to discover information in an officer's personnel file which can assist in the preparation of their defense in a criminal case. (Id. at p. 535, 113 Cal.Rptr. 897, 522 P.2d 305; see Pen.Code, § 832.7 and Evid. Code, § 1043 et seq.)[3] The ruling on a Pitchess motion is addressed to the discretion of the trial court and will not be reversed unless an abuse of that discretion is shown. (Pitchess, supra, 11 Cal.3d at p. 535, 113 Cal.Rptr. 897, 522 P.2d 305; see also City of San Jose v. Superior Court (1998) 67 Cal.App.4th 1135, 1145, 79 Cal. Rptr.2d 624.)
In his motion, Mooc requested access and review of the personnel files of Officer Garcia and any other officer whose identity became "apparent during the course of discovery"[.] (Emphasis added.) Specifically, Mooc requested "any and all documents ... as defined in Penal Code section 832.8(e); records maintained pursuant to Penal Code section 832.5(b); and any other records pertaining to the above-mentioned officer(s) and that pertain to: [¶] (a) Record of any incident of force, aggressive conduct or violence ... and/or the giving of false testimony; [¶] (b) Record of any complaints registered ... against the officer) .... alleging force, aggressive conduct, or violence directed at persons detained, arrested, or in custody, and/or the giving of false testimony; [¶] (c) Record of disciplinary actions taken against the officers) or possible disciplinary actions, to be taken as a result of any complaint or investigation related to the above; [¶] (d) The [identifying information] of any person ... submitting complaints ...; [¶] (e) The [identifying information] of any person or persons interviewed in connection with the investigation of force, aggressive conduct, or violence ... and/or the giving of false testimony; ..." (Emphasis added.) Finally, Mooc requested that the order be a continuing one, mandating any newly acquired documents be divulged to the defense through the completion of trial.
The court conducted an in camera review of a file, which the assistant city attorney represented was the personnel file of Frank Garcia. The court, after examining the file's contents, returned to the bench and announced that "candidly there's another incidence [sic] in determining its relevancy as the court's concluded that it has very little, if any, probative value, and based upon that and 1045 of the Evidence Code, the court's going to decline allowing the defendant to peruse the officer's personnel records." On appeal, Mooc requests we review the personnel file submitted to the trial court  which is still unknown to the defense  and determine if the denial of the motion was an abuse of discretion. We attempted to do that, but opened instead a Pandora's box.
The first ill wind escaped the box when we ordered the augmentation of the record on appeal to include  under seal  the personnel file reviewed by the trial court. The response this court received was an application from the city attorney's office to modify our order. This request included a declaration, revealing" (1) the file had never been preserved by the city attorney's office but was presently held by the police department; and (2) the police department and the city attorney's office feared that obedience to our court order would deprive them of maintaining the "chain of custody" of such records as required by Penal Code section 832.5. Finally, the application requested we accept *459 copies of that which the city attorney's office represented was the record reviewed in camera in the criminal case, although the declarant was not the representative present in court at the time of the hearing on the Pitchess motion. We denied the modification request, ordering prompt compliance with the order.
To comply with our order, the city attorney's office proffered a surprisingly small envelope, containing a police report of the incident forming the basis for the criminal charge and a single-paged form dated the day before the incident. This cryptic response  the second chilling breeze to escape the chest  was not only unexpected, but obviously not the personnel file of a peace officer, as such files commonly contain all personnel actions, promotions, demotions, citizens' complaints  investigated or not  commendations, worker's compensation claims and disciplinary actions. Moreover, the trial court's remarks made after it reviewed the file, referring to some other incident which the court deemed irrelevant, did not coincide with this envelope's contents. Due to this confusing ambiguity, we ordered "Hugh Halford, Assistant City Attorney for the City of Santa Ana, [ ] to file a declaration with this Court, under penalty of perjury, attesting as to whether or not the documents ... are the records and documents he submitted to, and were reviewed by, the superior court at the Pitchess motion in this case, and whether the documents lodged in response to our order [were] the same documents he was ordered to maintain."
The declaration we received in response to our order comprised the third icy blast issuing from Pandora's dower. Halford declared that he had appeared at the hearing on the Pitchess motion, "with the original copies [sic] of all potentially responsive records that were in existence in the City of Santa Ana Police Department" (emphasis added) for the officer in question. Furthermore, he declared that "[p]ursuant to court order, after the hearing I requested that the original records reviewed by the court be maintained by the Department for an indefinite period of time." He then swore that he reviewed that which was submitted to this Court in response to our order, "and do not recall any other records that were produced in response" (emphasis added) to the Pitchess motion. Finally, Halford stated that no other records existed for Officer Garcia and that no records regarding this officer had been purged or removed from his personnel file.
We set this case for oral argument even though the parties had waived the appearance, ordering all officers involved in this morass to be present and answer questions regarding the discrepancies. In oral argument, an astounding revelation occurred: We were informed that the Santa Ana Police Department and City Attorney's Office regularly, systematically, and secretly censored all personnel files before conveying them to any court for in camera review, removing all worker's compensation claims or other records the agencies deemed superfluous. This revelation directly contradicted Halford's earlier sworn declaration that "no records of ... Officer Frank Garcia have been purged or removed from his personnel file."
After oral argument, we ordered the Santa Ana Police Department and the City Attorney's Office to provide us with "all documents held ... as personnel records of Police Officer Frank Garcia.... These records are not to be screened or preselected by any person or agency; the entire personnel file ... is ORDERED transmitted to this court for review." (Original emphasis.)
Finally, our court received the personnel file of the officer in question. This occurred (1) after a Pitchess motion was filed, argued, and decided; (2) after the trial on the case was held and verdict rendered; (3) after judgment was imposed and execution of sentence commenced; and (4) after the entire case was briefed by both parties and argued on appeal. It was only after all of this that the personnel file of the officer was seen by a court for the very first time.
Whatever basis was used to "screen" and censor information in the file, such an action clearly violated the entire purpose *460 of providing personnel files to courts for in camera review under a Pitchess motion. (See Evid.Code, § 1043 et seq.) In sheer quantity, the file expanded from a first submission comprised of a small group of stapled pages to an entire evidence box of files, forms, folders and records on the last submission. Not surprisingly, more than one reference was found in the complete file which a court could deem to be potentially relevant.[4]
This mountain of bureaucratic disobedience compels us to voice our disapproval of the actions of both the Santa Ana Police Department and City Attorney's Office, and the shared responsibility which must be borne by the prosecutor's office for failing to discover and remedy it. Public confidence in the criminal justice system is eroded when its officials deliberately fail to disclose records ordered disclosed. As Justice Brandeis so eloquently noted three-quarters of a century ago, "Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example...." (Olmstead v. United States (1928) 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944, dis. opn. of Brandeis, J.)
In this case, the court was barred from ever exercising its discretion. Because the trial court never received the complete personnel file to review, its decision on the motion was without any rational basis. (Cf. People v. Jackson (1996) 13 Cal.4th 1164, 1220, 56 Cal.Rptr.2d 49, 920 P.2d 1254 [ruling on Pitchess motion must be reasoned].) When the trial court's ruling on a Pitchess motion occurs without a review of the personnel file  due to the systematic censoring of all material by an agency or by the court's refusal to review the file in camera (see, e.g., People v. Gill (1997) 60 Cal.App.4th 743, 750, 70 Cal. Rptr.2d 369)  the procedures of Evidence Code section 1043 et seq. have been violated, and the ruling must be reversed.

III

Prosecutorial Misconduct
Mooc argues reversal is required because the prosecutor improperly crossexamined two defense witnesses as to a possible fabrication of their testimony at the instigation of a third party. The two witnesses, Le and Vo, testified that Garcia pushed Mooc into a corner and then hit him in the head. The prosecutor asked them whether another inmate named Solis had proposed they "get together and pin this on Garcia."[5] The defense objected to the questions as hearsay, irrelevant and not proffered in good faith. The objections were overruled.[6]
*461 The prosecution never substantiated the accusation, arguing the inquiry was a normal investigation into possible bias. The prosecutor called neither Solis nor the other inmate, Puskas, whom he had represented to the court would prove the fact. The prosecution failed to present any evidence that such a hearsay statement was ever made by Solis or anyone else. Both Le and Vo strongly denied the accusation; Le even explained Solis was "locked up" at the time and could not have talked to anybody. Vo merely denied that Solis ever suggested to him "get[ting] the police officer in trouble."
The prosecutor did not stop at that, however. He then insisted on arguing that, irrespective of the lack of evidentiary support, the two witnesses "c[a]me in here and commit[ted] perjury." Mooc characterizes the combination of the questions and the unsupported argument as prosecutorial misconduct, pointing out a prosecutor is prohibited from implying the existence of facts he or she cannot prove. (People v. Lo Cigno (1961) 193 Cal.App.2d 360, 388, 14 Cal.Rptr. 354.)
The Attorney General replies that the inquiry was a normal attack on the credibility of the witnesses and a discovery vehicle for bias. The question was not improper without actual proof that the prosecutor was proceeding in bad faith. (Cf. People v. Sandoval (1992) 4 Cal.4th 155, 182-183, 14 Cal.Rptr.2d 342, 841 P.2d 862 [defense failed to support its accusation with any evidence that prosecutor's question was in bad faith].)
In this instance, it is the prosecution that has failed to present the evidence, after leading the trial court to believe it would "prove up" the statement through the testimony of Puskas. An attack on a defense witness's credibility for bias would have been initiated by an inquiry into the relationship between the witness and the defendant (e.g., People v. Martin (1983) 150 Cal.App.3d 148, 166, 197 Cal.Rptr. 655), not whether an absent third party  unrelated and unconnected to the defendant  had suggested fabricating a particular defense.
This situation is akin to the prosecutor's technique in People v. Lo Cigno, supra, 193 Cal.App.2d at pages 387-391, 14 Cal. Rptr. 354. Questions were repeatedly proffered to defendant and his witnesses implying a relationship between Lo Cigno and known mobsters. From this it was argued that a conspiracy existed between these mobsters and the defendant. "The People succeeded in painting a picture of what the defense characterized as a gangland murder committed by the associates of Mickey Cohen. But the effort of the People was to establish not by evidence, but by mere suggestion and innuendo, that Lo Cigno had probably conspired with the others to murder O'Hara...." (Id. at p. 391, 14 Cal.Rptr. 354.) It is well established that a prosecutor cannot pose questions which by their nature "suggest[] to the jurors that the prosecutor had a source of information unknown to them which corroborated the truth of the matters in question. The rule is ... that the prosecuting attorney may not interrogate witnesses solely `for the purpose of getting before the jury the facts inferred therein, together with the insinuations and suggestions they inevitably contained, rather than for the answers which might be given. [Citations.]'" (People v. Wagner (1975) 13 Cal.3d 612, 619, 119 Cal.Rptr. 457, 532 P.2d 105.)
*462 That is exactly what happened here. The very nature of the questions, focusing on what some unknown third person supposedly said, presented the jury with the idea that the prosecutor had inside information proving these allegations. The witnesses' denial of those facts merely emphasized the apparent importance of them. This situation must be avoided. Cross-examination into a witness's bias is permitted and encouraged. Questions regarding an absent third party's statements from which the prosecutor argues the bias of trial witnesses are not.

IV

Prejudice
The question remains as to the appropriate remedy. Such errors require reversal only if they have "resulted in a miscarriage of justice." (People v. Wagner, supra, 13 Cal.3d 612, 620, 119 Cal. Rptr. 457, 532 P.2d 105, citing People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.) In this case, the two separate errors complemented each other in denying Mooc a fair trial. The first resulted in Mooc being unable to discover whether Garcia had engaged in other instances of excess force, assaultive behavior or dishonesty. Without that information, critical corroboration of Mooc's defense was eliminated. And, the unacceptable manner in which the prosecutor pursued an attack on the two witnesses who corroborated Mooc's story threatened the jury's ability to accurately weigh the evidence. We cannot say the jury would not have reached a more favorable verdict but for the combined errors in this trial. (Wagner, supra, 13 Cal.3d at p. 620, 119 Cal.Rptr. 457, 532 P.2d 105.)

V[**]

VI

Disposition
The judgment is reversed, and the cause remanded with the following directions: (1) The great bodily injury enhancement must be stricken before any retrial of the matter; and, (2) as noted in People v. Gill (1997) 60 Cal.App.4th 743, 70 Cal.Rptr.2d 369, in the "disposition of a criminal case the appellate court is not limited to the more common options of affirmance, reversal or modification of the judgment.... The court may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances. (Pen. Code, § 1260.) [¶] [In accordance with this provision,] we order the following [further directions. The trial court is] to conduct an in camera hearing on appellant's discovery motion consistent with this opinion. If the in camera hearing reveals no discoverable information in Officer [Garcia's] personnel file which would lead to admissible evidence [in the trial court's assessment], the trial court shall [order a new trial].... If the in camera hearing reveals discoverable information which could lead to admissible evidence helpful to appellant in defense of the charge, the trial court shall grant the requested discovery...." (Id., at p. 751, 70 Cal.Rptr.2d 369, internal quotation marks omitted.)
CROSBY, J., and BEDSWORTH, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.
[1] See Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305.
[2] Mooc also faced an enhancement of having inflicted great bodily injury, but this allegation was dismissed at the end of the prosecution's case-in-chief because the proof was insufficient as a matter of law.
[3] Evidence Code sections 1043 through 1045 codified the procedures mandated in Pitchess v. Superior Court, supra, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305. (People v. Hustead (1999) 74 Cal.App.4th 410, 416, 87 Cal. Rptr.2d 875.)
[4] We emphasize that we have neither ordered nor permitted the disclosure of the material transmitted to us to review. All records conveyed to us have only been reviewed by us in camera and have never been described in any detail, so as to prevent any breach of confidentiality.
[5] The prosecutor asked Le, "who is Mr. Solis?" When Le answered that he was a Mexican inmate, the prosecutor responded with, "Isn't it true, sir, that Mr. Solis, after the incident, gathered all the inmates of your module together and said, `Let's pin this on Garcia'?"

Similarly, the prosecutor asked Vo whether he was "familiar with an inmate named Solis?" When Vo replied that he was, the prosecutor asked, "do you remember immediately after this incident Mr. Solis standing up and telling everyone what to say with regard to the incident?" After Vo's denial, the prosecutor replied, "[h]e didn't tell you that you need to back up the inmate and get the police officer in trouble?"
[6] Before receipt of any evidence, the defense requested a ruling on its in limine motion whether inquiry could be made of what a third party inmate said. The prosecution responded that a potential witness, Atilla Puskas, would testify that he was a jail inmate when the fight between Garcia and Mooc arose. The prosecutor indicated that Puskas would establish that Solis yelled that all the inmates should "blame the officer." Mooc's counsel argued that he had subpoenaed Solis, but that he had already been transported to Louisiana and was unavailable. His statements were hearsay and should be excluded. The trial court pointedly asked the prosecutor if he was going to "prove up" the fact. The prosecutor, never answering the court's question directly, responded Solis's statements could be admitted for the nonhearsay purpose of showing "the effect [the statement had] on the listener[s] or goes to the witness' bias." [Sic] Finally, the defense attorney noted any reference to Solis's statement barred him from cross-examining an adverse witness in violation of Mooc's Sixth Amendment right, and that it was also more prejudicial than probative.

The trial court gave an indication that it might grant approval to Puskas's testimony that Solis yelled to all inmates at the scene "to blame it on" Garcia, but deferred its ruling to see if the defense witnesses testified that Officer Garcia started the fight. Le and Vo testified as indicated, but Puskas was never even called to testify.
[**] See footnote *, ante.