Filed 10/13/23  P. v. Biles CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JIMMY LEE BILES,<br><br>        Defendant and Appellant. | A163789<br><br>(Contra Costa County<br>Super. Ct. No. 05-190786-4) |

Defendant Jimmy Lee Biles appeals his conviction for first degree murder, asserting the trial court improperly admitted the underlying facts of two prior convictions and a juvenile adjudication.  We conclude the juvenile adjudication was properly admitted, and any error in admitting the underlying facts of two prior convictions was harmless.  We affirm.

## I.

## BACKGROUND

### A.  Factual Background

The victim, Albert L., lived in a housing project known as "El Pueblo." El Pueblo has a reputation as a higher crime area, with drug use, guns, violence, and prostitution.

Defendant testified his daughter had gone missing on the day of the incident.  He reported her missing to the police and told them she had been taken from his home by sex traffickers.  Defendant testified he had gone to El

Pueblo looking for her because he did not believe the police would help. Defendant's daughter testified she had gone to El Pueblo with a boy with whom she had been texting for about a week or two. She informed police her interactions with the boy were consensual and she wanted to be there. At trial, she testified she was not being sex-trafficked, but she was scared and did not want to be at El Pueblo.

On the night of the incident, the victim's daughter testified, she had just arrived home from "step" practice and found her family watching a movie. Her father decided to go to the store for tissue. While her father was still in the house, she heard a disturbance outside with yelling and crying. She looked out a window and saw defendant standing by a white vehicle yelling at a girl to "come on." She testified she saw defendant grab the girl's backpack and throw her into the vehicle. Approximately 10 minutes later, she heard another "disturbance" outside and again looked out the window. She heard defendant yelling at some of the individuals outside and stating he would shoot or kill anybody while pacing by his car. At that moment, she observed her father walk out their front door, walk past the commotion with his hands in his pockets and his head down, and walk across the street. Her father and defendant did not engage in any conversation. She then saw defendant's vehicle make a U-turn and drive in the same direction that her father was walking, but she could no longer see her father at that point.

A neighbor testified she observed defendant pick up a girl in a white vehicle and make a U-turn. When defendant came across the victim, defendant exited his vehicle and started "swinging" at him. The neighbor noted she didn't "know what angered [defendant]." She testified defendant then got back into his vehicle and "sped out."

Defendant provided a conflicting version of events. Defendant stated when he arrived at El Pueblo, he saw his daughter standing outside next to a "black guy." Defendant testified that he grabbed his daughter by the shirt and shoulder, and grabbed her backpack out of her hand. The "black guy" then grabbed onto the backpack. Defendant pulled the backpack out of the other man's hand and put his daughter into the back seat of his vehicle. Defendant got in the car and started to drive away, but did not know how to exit El Pueblo, so he made a U-turn to exit the same way he entered. He testified he felt "scared to death" while driving. Defendant testified that, while he was trying to exit El Pueblo, he noticed the same "black guy" in the road by his vehicle. Defendant stated he "would have went out" if the victim had been on his side of the car and he "didn't have to worry about the window getting busted in or anything on my . . . son's side."[1] Instead, defendant testified he exited the car with a knife and told the victim to keep walking. He testified the victim grabbed his shirt, and he then felt a blow to the back of his head. Defendant then began stabbing the victim until he let go of defendant, whereupon defendant got back into his vehicle and left El Pueblo.

After leaving El Pueblo, defendant threw the knife out of his vehicle's window and left his daughter at his aunt's house. Defendant lied to police and his family about his actions and the location of his daughter.

The neighbor found the victim lying on the ground and injured. The victim asked her to get his wife, and she did so. The victim subsequently died from multiple sharp force injuries, including a stab wound to the heart.

---

[1] Defendant's 14-year-old son had accompanied defendant and was seated in the front passenger seat of the vehicle.

## B. Procedural Background

The Contra Costa County District Attorney filed an amended information charging defendant with murder. (Pen. Code,[2] § 187, subd. (a); count 1.) The information further alleged personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and five special allegations regarding (1) the commission of a violent felony within 10 years of a prison term for a prior violent felony (§ 667.5, subd. (a)); (2) three prior strike offenses (§§ 667, subds. (d), (e), 1170.12, subd. (b)); and (3) a prior serious felony (§ 667, subd. (a)(1)).

During trial, the prosecutor filed a motion in limine to admit the fact of defendant's 1997 convictions of vehicular manslaughter and carjacking to impeach defendant's credibility should he testify. The prosecutor also sought admission of defendant's 1988 juvenile adjudication for murder. The court granted the motion as to the 1997 convictions, but excluded the juvenile adjudication. The court did, however, state it would consider admission of the juvenile conviction if "somehow the door [is] opened."

Defendant ultimately testified and acknowledged his conviction for carjacking. He confirmed the carjacking "resulted in a car crash where somebody died," and that he was convicted of vehicular manslaughter. Defendant also testified he was placed on probation for a later conviction of possession of a firearm. The prosecutor argued defendant's testimony had opened the door to admitting evidence of his sentences by testifying about his probation term in connection with the firearm possession conviction. The prosecutor also asserted he should be allowed to offer evidence of the underlying facts of the carjacking and vehicular manslaughter convictions

---

[2] All statutory references are to the Penal Code unless otherwise indicated.

4

because defendant's testimony was "a gross misrepresentation of what happened." The court agreed and allowed evidence on both issues, noting that the way defendant phrased the carjacking and vehicular manslaughter "suggested it was a minor deviation which resulted in the death of someone else."

The prosecutor subsequently asked defendant if he had been convicted of a felony carjacking. In response, defendant confirmed "it was a carjacking," and stated he took the car "at gunpoint" and "got in a high-speed chase and got in a crash, and someone died." Defendant stated he "was 25 years old" and "a lost individual," and that now he has "to live with that every day . . . of my life." The court interjected a limiting instruction following defendant's response. The court informed the jury "this information that is being asked about can only be considered for purposes of credibility and not for propensity to commit a crime." The prosecutor then clarified the facts underlying this conviction: "You drove up Highway 4 fleeing the police at 140 miles an hour, splitting lanes in that Camaro, and crashed into a man who had nothing to do with anything, and killed him, right?" Defendant disagreed with certain details but acknowledged crashing into someone and killing him.

Also during defendant's testimony, he stated he had never been to El Pueblo before and "it's not my cup of tea, you know." He further stated, "I have never ever thought of ever going over there. . . . I would have never ever, ever, ever been in this place in my life." In response, the prosecutor again sought to admit defendant's juvenile adjudication. He argued the door opened to admit the juvenile adjudication "when the defendant stood up on the witness stand and talked about how dangerous El Pueblo was and what a horrible place it is, and you don't go to El Pueblo, and then he said, 'It's not

5

my cup of tea,' " because "that is the defendant affirmatively testifying to his good character."

The court agreed. It explained defendant "chose to engage in a diatribe in his responses which painted him as a peaceful person, as a person who had no business in El Pueblo, as a person who did not want to deal with, quote/unquote those persons, as a person who would have never ever gone to that location in his life because that was not his cup of tea." As a result of this testimony, the court noted, "We are talking about character for peacefulness or violence," and altered its prior ruling to "allow the juvenile adjudication" but not the underlying facts surrounding it. The court concluded the adjudication is more probative than prejudicial based on defendant's testimony. However, it clarified the admission of the juvenile adjudication was only on the issue of defendant's credibility, and it provided the jury with a limiting instruction stating such.

The jury found defendant guilty of first degree murder and found true the deadly weapon enhancement. The trial court subsequently found true the special allegations regarding defendant's prior convictions. The trial court sentenced defendant to consecutive prison terms of 75 years to life for murder and one year for the deadly weapon enhancement. Defendant timely appealed.

## II.
## DISCUSSION

On appeal, defendant argues the trial court erroneously admitted his juvenile adjudication for murder and evidence of the underlying facts of his prior carjacking and vehicular manslaughter convictions. He further argues these errors, cumulatively, deprived him of the right to due process and a fair trial.

6

## A. Admission of Prior Convictions

"A prior felony conviction involving moral turpitude is admissible to impeach a witness." (*People v. Gutierrez* (2018) 28 Cal.App.5th 85, 88 (*Gutierrez*).) However, evidence of a prior felony conviction for purposes of impeachment is subject to court discretion under Evidence Code section 352, which weighs probative value against prejudicial impact. (*Gutierrez*, at p. 89.) "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) We review the trial court's ruling for an abuse of discretion. (*People v. Anderson* (2018) 5 Cal.5th 372, 407.) "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion." (*Clark*, at p. 932.)

### 1. Juvenile Adjudication

Defendant argues his statement that El Pueblo—known for violence, drugs, and prostitution—was not his " 'cup of tea' " was not a comment about his peaceful character but a disinclination to visit a specific location. Accordingly, he contends his juvenile murder adjudication was not proper rebuttal evidence. Defendant further asserts even if the juvenile murder adjudication was proper rebuttal evidence, its admission constituted an abuse of discretion under Evidence Code section 352. He notes the juvenile murder was unrelated to issues on honesty, remote in time, occurred when he was a

minor, and problematic because it involved the same conduct as the charged offense.  We disagree.

Here, the parties disagree whether defendant's statement that El Pueblo was not his " 'cup of tea' " indicates a dislike of a certain area versus a misrepresentation of his background.  We need not resolve this issue because defendant's subsequent testimony prior to admission of the juvenile adjudication justified its admission.  Specifically, defendant testified that he lied to the police based on feeling "scared" because he had "never killed nobody."  In response to this testimony, evidence of his prior juvenile adjudication for murder is highly probative of defendant's "honesty or veracity."  (See *Clark*, *supra*, 52 Cal.4th at p. 931.)  Accordingly, regardless of the "cup of tea" statement, admission of the juvenile adjudication was proper in light of defendant's express testimony that he had "never killed."  (See *People v. Turner* (2020) 10 Cal.5th 786, 807 ["Our task is to review the trial court's *ruling*, not its reasoning."].)  As explained in *People v. Kerley* (2018) 23 Cal.App.5th 513, 553, "one party may render otherwise inadmissible evidence admissible by introducing the topic selectively such as to leave a misleading impression."  To this end, we find *People v. Lankford* (1989) 210 Cal.App.3d 227 instructive.  In that matter, the defendant testified he had a prior felony conviction but then stated, " 'I didn't have [any] incident yet since I've been out.' "  (*Id.* at p. 232, italics omitted.)  However, the defendant was awaiting trial for armed robbery and assault with a deadly weapon.  (*Ibid.*)  The court concluded the prosecutor was entitled to ask the defendant about the pending charges in light of the defendant's testimony, explaining "it would be unfair to leave the jury with the impression he had 'been on his good behavior' since being released from prison."  (*Ibid.*)  Likewise, it was appropriate for the trial court here to allow the prosecutor to

impeach defendant with his juvenile adjudication for murder after defendant testified he was scared because he had never killed anyone.

Nor does the juvenile adjudication's remoteness justify a different conclusion. As explained in *People v. Mendoza* (2000) 78 Cal.App.4th 918, cited by defendant, "[e]ven a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior." (*Id.* at pp. 925–926.) And since the juvenile adjudication, defendant has been convicted of carjacking, vehicular manslaughter, and possession of a firearm.

In addition, the trial court limited the prejudicial impact of the juvenile adjudication by excluding any mention of the underlying facts of the murder and instructing the jury to consider the conviction only as to the issue of defendant's credibility. Accordingly, we cannot conclude the trial court abused its discretion in admitting evidence of defendant's juvenile adjudication.

However, even assuming the court erred in admitting evidence of the juvenile adjudication, we conclude any such error was harmless as discussed below.

### 2. 1997 Convictions

Defendant contends the underlying facts of his carjacking and vehicular manslaughter convictions—i.e., speeding, switching lanes, and killing an innocent victim—were improperly admitted because they had no probative value as to the question of credibility or dishonesty. Defendant further notes these convictions had minimal probative value because they occurred approximately 25 years prior to the current offense.[3]

---

[3] In his reply, defendant also contends the underlying facts are unrelated to the issue of his sentence for those convictions. We need not reach this argument because we conclude the trial court erred in admitting

9

In response, the Attorney General argues defendant "minimized" his convictions, which opened the door to introducing the underlying facts. We disagree. Defendant only testified that (1) 25 years prior he was convicted of carjacking, (2) that carjacking "resulted in a car crash where somebody died," and (3) he was also convicted of vehicular manslaughter. Defendant did not omit or deny any of his convictions. Nor did his testimony seek to minimize or justify the car crash. To the contrary, his testimony did not provide any subjective description—good or bad—about the car crash. He merely testified that a car crash occurred that killed someone. This statement was a reasonable transition to defendant's subsequent testimony that he was also convicted of vehicular manslaughter, and it did not leave the jury with a "misleading impression." (See *People v. Kerley*, *supra*, 23 Cal.App.5th at p. 553; cf. *People v. Shea* (1995) 39 Cal.App.4th 1257, 1268 [evidence of underlying facts admissible because, despite defendant's conviction for raping one woman and attempted rape of another, defendant "was attempting to falsely imply there had been no rape, [and] only a single incident of *attempted* rape"].)

Moreover, the Attorney General does not assert the underlying facts of the convictions are probative by themselves on the question of defendant's credibility or outweigh the prejudicial effect of the evidence. In *Gutierrez*, *supra*, 28 Cal.App.5th 85, our colleagues in the Fourth Appellate District explained the potential impact of such evidence: "In many instances, the

the underlying facts. However, to the extent defendant is attempting to challenge the trial court's admission of his sentence for these convictions, such an argument is waived. He failed to offer any meaningful analysis of this issue in his opening brief. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "].)

10

conduct underlying a felony adds nothing to the probative value of the felony, while at the same time it increases the prejudicial effect. . . . [¶] . . . For example, the bare fact that a witness has a prior conviction for robbery is sufficient to show dishonesty.  Additional details—e.g., regarding the nature of the force or fear involved or the nature of the property taken—are likely to be more prejudicial than probative." (*Id.* at p. 90.)  We agree with the concerns outlined in *Gutierrez.*  Here, the underlying facts of the vehicular manslaughter conviction—e.g., speeding and switching lanes—did not illuminate defendant's credibility or dishonesty, were more prejudicial than probative, and should not have been admitted.  (See *People v. Dalton* (2019) 7 Cal.5th 166, 214 ["Evidence of circumstances underlying a conviction is admissible to impeach credibility if the proponent demonstrates that the evidence has 'any tendency in reason' to disprove credibility."].)

While the court erred in admitting the underlying facts of the carjacking and vehicular manslaughter convictions, we conclude such errors were harmless as discussed below.

**B.  Harmless Error**

### 1.  Defendant's Prior Convictions

The Attorney General contends any errors in admitting the underlying facts of defendant's carjacking and vehicular manslaughter convictions were harmless because multiple witnesses testified that the victim did not provoke defendant prior to the incident.  We agree.

"We review evidentiary errors for prejudice by determining whether it was reasonably probable that a jury would have returned a more favorable verdict for defendant had the court not admitted the evidence." (*People v. Felix* (2019) 41 Cal.App.5th 177, 187, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)  "Absent fundamental unfairness, state law error in admitting

11

evidence is subject to the traditional *Watson* test." (*People v. Partida* (2005) 37 Cal.4th 428, 439.)[4]

Here, there was no dispute defendant killed Albert L.; the only question was whether defendant acted in self-defense. On this issue, defendant's testimony was substantially undermined without considering the evidence of his prior convictions. Defendant claimed that he felt threatened because "the same guy that was next to my daughter" was in the road in front of his car. However, the victim's daughter testified her family, including her father, were home watching a movie when she heard a "disturbance" outside and saw a man yelling at a girl. Her father had not been with defendant's daughter and was not involved in the ongoing disturbance. When her father did exit the house, the daughter testified, he walked past the commotion with his hands in his pockets and his head down, did not speak with anyone, and crossed the street.

Defendant also testified he felt threatened because the victim was "sitting in front of my car," "not letting me out," and "trying to stop [him] from taking [his] little girl." He claimed he began stabbing the victim only after the victim approached and grabbed him, and defendant was hit on the back of the head. However, defendant admitted he had no visible injuries on his body. A neighbor also observed the entire incident and testified she saw defendant exit his vehicle, approach the victim, and start striking him. She stated she "d[id]n't know what angered [defendant]." The neighbor noted the

---

[4] While defendant cites *People v. Leach* (1975) 15 Cal.3d 419 for the proposition that evidentiary errors involving constitutional rights mandates reversal unless the prosecution proves the error harmless beyond a reasonable doubt, that case involved denial of the right to confrontation. (*Id.* at p. 446.) Defendant has not demonstrated constitutional rights are at issue here.

victim "didn't do nothing" and was just "walking to the store like a regular day." She did not see the victim fighting defendant, and only saw defendant "swinging" his arms. She explained she recognized the victim, and said he normally went to the store "around that time." Her trial testimony was in accord with the information she provided to the police immediately after the incident.

Apart from two witnesses—including a neutral third party—directly contradicting defendant's story, the evidence regarding defendant's subsequent conduct provided a substantial basis for the jury to disbelieve defendant's account. At trial, defendant admitted to (1) disposing of the murder weapon, (2) repeatedly lying to police and his family about the incident, and (3) instructing his 14-year-old son to lie to police and support his alibi. A police detective also testified defendant had deleted all call logs prior to 10:56 p.m. and all text messages prior to 9:40 p.m. on the day of the incident—i.e., after the victim was killed.

Defendant failed to provide any meaningful justification for his actions. Defendant asserted he lied to the police about the then-current location of his daughter and that he had been home all night because they allegedly did not assist him in finding his daughter. He claimed to have destroyed evidence because he "knew [he] wasn't going to get a fair break." Defendant also tried to justify lying to his family about his daughter's location—despite them assisting him in locating his daughter—because he was "trusting nothing" and "d[id]n't want no part of nothing now." The jury reasonably could have found defendant's excuses to be illogical and undermined his credibility. Nothing in the record indicates the jury struggled to assess credibility or that the prior convictions played a meaningful role in their deliberations.

Finally, the court instructed the jury it could only consider the prior conviction evidence for the limited purpose "of credibility and not for propensity to commit a crime." Any risk of prejudice arising from the prior conviction evidence " 'must be deemed to have been prevented by the court's limiting instruction to the jury. We presume that jurors comprehend and accept the court's directions.' " (*Gutierrez*, *supra*, 28 Cal.App.5th at p. 91; *People v. Franklin* (2016) 248 Cal.App.4th 938, 953 ["We presume that the jury followed these limiting instructions, and there is nothing in this record to rebut that presumption."].)

In response, defendant asserts errors that "strik[e] directly at the heart of [a] defense" are prejudicial, and credibility was a key factor in his self-defense claim. However, errors are only "prejudicial if 'the evidence against defendant is less than overwhelming.' " (*People v. Lindsey* (1988) 205 Cal.App.3d 112, 117.) And defendant concedes "the prosecution had an abundance of other impeachment [evidence] against [him]."

Finally, defendant relies on *People v. Hendrix* (2022) 13 Cal.5th 933 to assert a conviction should be reversed if there is a " 'reasonable chance' " the jury would have reached a different conclusion had the prior convictions been excluded. We find *Hendrix* distinguishable. In that case, the trial court provided an erroneous mistake of fact instruction to the jury. The Supreme Court noted the "misinstruction . . . effectively operated to impose an unwarranted reasonableness requirement on [the defendant's] mistake of fact claim." (*Id.* at p. 944.) The court further explained "[t]he potential effect of the error was considerable" because both sides presented extensive evidence and arguments regarding the defendant's mental state. (*Id.* at p. 945.) Here, defendant does not assert the jury was misinstructed on any element of the crime or his defense, or that the prosecution was excused from meeting its

burden of proof. Rather, he contends the evidence may have swayed them to convict him of first degree murder rather than a lesser charge. Defendant's argument is mere speculation.

While defendant repeatedly claimed he engaged in self-defense against "a man that was trying to take my life that had my 12-year-old daughter," nothing in the record apart from his testimony supported this argument. And, as discussed above, defendant's conduct following the murder and witness testimony seriously undermined his claims. Given the overwhelming nature of the evidence of guilt, we cannot conclude impeachment with defendant's prior convictions reasonably impacted the verdict. Likewise, for those same reasons, impeachment with defendant's prior juvenile adjudication for murder did not reasonably affect the verdict.

### 2. Cumulative Error

Defendant also contends the cumulative impact of these errors constituted a due process violation and a violation of his right to a fair trial. However, our Supreme Court has rejected efforts to inflate "garden-variety evidentiary questions into constitutional ones." (*People v. Boyette* (2002) 29 Cal.4th 381, 427.) A due process violation occurs only where evidentiary error results in the complete preclusion of a defense. (*Id.* at pp. 427–428; accord, *People v. Partida, supra,* 37 Cal.4th at p. 439 ["the admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*"].)

Defendant next argues special caution must be applied as to evidence of past misconduct because of the heightened potential for undue prejudice. But *People v. Ewoldt* (1994) 7 Cal.4th 380, upon which defendant relies, addressed *uncharged* crimes and the "increased . . . danger that the jury might have been inclined to punish defendant for the uncharged offenses."

(*Id.* at p. 405.) Such concerns are not present here, where the prior offenses at issue involve convictions.[5]

We have found these errors individually to be nonprejudicial and, viewing them cumulatively, we conclude defendant is not entitled to reversal on this record.

## III.
## DISPOSITION

The judgment is affirmed.[6]

---

[5] Nor is defendant's reliance on *U.S. v. Johnson* (6th Cir. 1994) 27 F.3d 1186 persuasive. Contrary to defendant's argument, the prosecutor did not argue to the jury the challenged evidence demonstrated "who [defendant] is and what he is about." Rather, the court specifically limited the evidence of prior convictions to defendant's credibility.

[6] In a related petition for a writ of habeas corpus (case No. A167983), defendant argues newly discovered evidence supports his self-defense claim and would have resulted in the jury reaching a more favorable result. We deny the petition today by separate order.

MARGULIES, ACTING P. J.

WE CONCUR:

BANKE, J.

GETTY, J.[*]

A163789
*People v. Biles*

---

[*] Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.